104 N.J. Super. 18 (1968)
248 A.2d 438
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RICHARD ANDERSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 17, 1968.
Decided July 5, 1968.
*19 Before Judges SULLIVAN, FOLEY and LEONARD.
Miriam N. Span, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Peter Murray, Public Defender, attorney).
Mr. Richard A. Mink, Assistant Prosecutor, argued the cause for respondent (Mr. Leo Kaplowitz, Union County Prosecutor, attorney).
PER CURIAM.
Defendant was tried by jury and convicted of armed robbery. He prosecutes this appeal on the ground that it was plain error and manifestly prejudicial to defendant for the trial judge to have given the accomplice charge to the jury.
It is unnecessary to detail the State's proofs except to note that a prima facie case of defendant's participation in a four-man armed robbery was established. Indeed, defendant was shot by the police during the course of the robbery.
Defendant's story was that on the day in question he had been drinking and had taken some goof balls. He then visited a night club with three friends, Herman Fisher, Eugene Coleman and Melvin Spence, and had some more drinks. He began to feel ill and went outside and fell asleep in the back seat of Spence's car. The next thing he knew he woke up in the car and heard bells ringing (apparently the burglar alarm). He got out of the car and walked over to a lighted building, entered and saw his three friends inside. Defendant heard shots and then he was wounded by two bullets. He denied having taken any part in the robbery.
Fisher, who had pleaded guilty to the robbery and been sentenced, testified in support of defendant's story. Defendant had also subpoenaed Coleman, who was in State's Prison, having pleaded guilty to the robbery and been sentenced. *20 Coleman apparently was unwilling to testify because he was trying to reopen his case. As a result, defendant decided not to call him as a witness.
However, the State decided to call Coleman as a rebuttal witness and, over Coleman's objection and a threat by the trial judge of contempt proceedings if he refused to testify, Coleman was sworn as a State's witness. Coleman's story was that defendant "was like bombed out" and had been left in the car while the other three committed the robbery.
In his charge to the jury the trial judge stated:
"Two individuals, Eugene Coleman and, I believe it was one Herman Fisher, have testified to facts which show some involvement on their part in the criminal situation out of which this indictment and this trial of the defendant arose. One testified for the State and one testified for the defendant. The law in this State is that a jury may convict one charged of crime upon the testimony of one who claims to have participated in the criminal event out of which the indictment and trial of the defendant arose, if in the judgment of the jury the testimony of such witness is entirely credible and worthy of belief. However, the testimony of such witnesses must be given close scrutiny in order to determine whether he or they have any special interest in the outcome of the case and whether the testimony of such person was influenced by the strong motive of hope or expectation of favorable treatment or reward or by any feelings of revenge or reprisal or by any feelings of loyalty or friendship to the one charged with the crime. One who admits his participation in a criminal offense, tainted as he is with confessed criminality, is often influenced in his testimony by the hope or expectation of favorable treatment or reward or by feelings of revenge or reprisal.
The basic question with respect to the testimony of such witnesses is one of interest in the event or case. The interest of a witness in the event or the result of the trial may be shown to affect his credibility or believability and aid you in determining the weight to be given to the testimony of such a witness.
You should carefully scrutinize all of the testimony of the witnesses, Herman Fisher and Eugene Coleman, and assess it in light of their interest, if any, in the outcome of the case as you determine what weight to accord to that testimony."
Defendant's attorney made no objection to the charge, saying he was "completely satisfied" with it. However, it is now asserted that the portion of the charge quoted above was "plain error" which manifestly prejudiced defendant.
*21 It is undisputed that the testimony of both Fisher and Coleman supported defendant's story. For that reason, the accomplice charge as such had no relevancy to the case and should not have been given.
Defendant's argument is that the charge admonishing the jury as to the weakness of accomplice testimony, rather than benefit him is is the purpose of the accomplice charge, hurt him since these witnesses had testified in his favor. In short, defendant contends that the testimony of Fisher and Coleman was unfairly downgraded.
We do not agree that plain error was committed by the trial judge in the aforesaid charge and that defendant was manifestly prejudiced by it. Despite the irrelevancy of the accomplice charge as such to the facts of the case, it was proper for the judge to remind the jury that it had the right to consider possible motives of loyalty and friendship in weighing the testimony of Fisher and Coleman.
The judge, in his charge, mentioned "close scrutiny" and "carefully scrutinize" in referring to the testimony of these witnesses. We do not approve of this particular language. However, in our opinion it did not possess the clear capacity to prejudice defendant, especially when no objection was made to it.
The case of State v. Gardner, 51 N.J. 444 (1968), while it states that the accomplice charge has no place in a situation similar to the one here presented, does not require the conclusion that the mere giving of the charge without more constitutes plain error. In Gardner, the court pointed out that the use of the term "accomplice" had an opprobrious and detrimental connotation of implication of the defendant. Here it is to be noted that the court did not use such term.
In the overall picture, we do not believe that the language used was so manifestly prejudicial as to require reversal, particularly in view of the overwhelming evidence of defendant's guilt.
Affirmed.
*22 FOLEY, J.A.D. (dissenting).
Preliminarily, I wish to say that I agree with the majority's statement that the State's proofs made out a prima facie case of defendant's participation in a four-man armed robbery. However, I think the trial judge's comment that "defendant was shot by the police during the course of the robbery" is given undue significance and may be misleading. The fact is that defendant claimed that he stumbled into the robbery, was not a participant in it, and was shot in the back. In conclusion, the majority states that the evidence of defendant's guilt was "overwhelming." This is true if the testimony of both Fisher and Coleman exonerating defendant was properly rejected, and points up the importance of a fair guidance by the trial judge to the jury of the standards to be applied by that body in its assessment of the credibility of those witnesses.
The majority does not expressly state that it was error for the judge to have charged the "accomplice rule." It does state that the rule "should not have been charged" and that the court did not "approve" the language employed by the trial judge, viz., "close scrutiny" and "carefully scrutinize," in referring to the testimony of Fisher and Coleman. It is inferable that by the use of the quoted language the majority intended to say that the trial judge committed error. I would go further and state unequivocally that it was indeed error.
I think I am supported in this view by State v. Gardner, 51 N.J. 444 (1968); see also State v. Spruill, 16 N.J. 73, 78 (1954) and State v. Begyn, 34 N.J. 35 (1961), cited therein. Athough Gardner was reversed on other grounds, it clearly states that there existed no reason to especially charge the accomplice rule since the witness therein could not hope for any special consideration from the State for having testified for defendant. We have the same situation here. Further, the court gave a strong admonition that upon a retrial of the case the charge should not be given except upon the request of counsel, and then the trial court should carefully *23 phrase the charge in the light of developments at the trial.
This brings us to the real point of cleavage between the majority views and my own. The majority holds that the trial judge did not commit plain error affecting the substantial rights of defendant. See R.R. 1:5-1 (a). I think otherwise.
It is fundamental that in every criminal case the State has the burden of proving defendant's guilt beyond a reasonable doubt and, consequently, if after an examination of all of the evidence, there remains in the minds of the jury a reasonable doubt of defendant's guilt, he is entitled to an acquittal, however suspicious a jury may be of his guilt. In this case the jury was erroneously instructed by the judge that not only could they take into consideration the interests of Fisher and Coleman in testifying favorably to defendant because of a feeling of friendship or loyalty (which, of course, is a legitimate consideration in assessing the motivation of these and other witnesses for testifying as they did), but, as distinguished from the witnesses who testified for the State, the jury's determination of the witnesses' credibility was further emburdened by their right to take into consideration Fisher's and Coleman's hope of reward or favor by the State. In this connection the trial judge went on to point out that the testimony of a participant in a criminal offense is "tainted" by his confessed criminality and thus is often influenced in his testimony by hope or expectation of favorable treatment or reward, or by feelings of revenge or reprisal.
Thus, there was improperly imported to the jury's deliberations a wholly irrevelant concept which had the capacity of persuading it that by reason of what the trial judge called "a special interest" in the outcome of the case (which plainly did not exist) the testimony of Fisher and Coleman was rendered suspect and less worthy of belief than that of the State's witnesses.
I am convinced that if the jury so concluded, the reasonable doubt rule was deeply invaded and therefore defendant's *24 "substantial rights" were affected to his manifest prejudice. Of course, we cannot know whether this actually occurred, but that is not the test. The test is: Did the plainly erroneous and irrelevant instruction have the capacity to prejudice defendant? I am convinced that it did. And it seems to me that if there is any question about it, the doubt should be resolved in favor of defendant, since he was powerless to prevent the judicial error created by the trial judge sua sponte.
I firmly believe that in such a situation it is far better to send a case back for retrial than to affirm a conviction which would remain shrouded by the suspicion that it may have resulted from the misguided jury instruction.
Therefore, I would reverse and remand for a new trial.