107 N.J. Super. 101 (1969)
257 A.2d 123
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHNNY LEE LEMON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 1969.
Decided October 2, 1969.
*102 Before Judges SULLIVAN, CARTON and HALPERN.
Mr. Daniel R. Coburn, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
*103 Mr. Rushton H. Ridgway, Assistant County Prosecutor, argued the cause for respondent (Mr. Joseph Tuso, Cumberland County Prosecutor, attorney).
HALPERN, J.A.D.
Defendant appeals from a conviction after a jury trial on a charge of breaking and entering a Bridgeton liquor store with intent to steal, contrary to N.J.S.A. 2A:94-1.
The State's proofs were to the effect that during the early hours of January 1, 1967 a burglar alarm sounded at the city hall from a burglar alarm system connected with the liquor store. The members of the Bridgeton police dispatched to investigate came upon defendant and one Cole in or near the store premises when they arrived at the scene. Officer Heath testified that while he was looking through the window of the door of the store he observed a man, later identified as Cole, climbing through a hole made in the store ceiling; that he fired two shots at Cole, but Cole escaped through the hole. Cole was later apprehended and ultimately pled guilty to the charge of breaking and entry and was confined to jail awaiting sentence when defendant's trial commenced.
So far as defendant's involvement in the transaction was concerned, the thrust of the evidence was that a window on the second floor of the building was found broken, and that defendant had sustained injuries when he escaped through the broken window, leaving a trail of blood, and that he staggered from the side of the building to the street, where he was apprehended and found to be bleeding profusely from the head and a cut on the left arm. His story to the police was that he had just been mugged.
The State's proofs were sufficient to sustain the jury's guilty verdict. The narrow issue presented is whether what occurred at the trial comported with due process and whether the verdict reached was the result of a fair trial.
*104 A number of errors occurred at the trial which so deeply affected the fundamental rights of the defendant as to require a new trial:
(1) Cole, the only witness for the defense, completely exonerated defendant from any implication in the breaking and entry. This was the situation when the prosecutor finished his cross-examination of Cole and the court questioned the witness:
Q. Did you ever tell Detective Gauntt that Mr. Johnny Lee Lemon went upstairs to warn you that the cops were coming at the Bridgeton Liquor Store while you were breaking through the ceiling?
A. No.
Q. What did you tell Mr. Gauntt with respect to Johnny Lee Lemon?
A. Nothing I can remember, because Johnny Lemon really wasn't on the premises.
Q. I didn't ask you that, I asked you what you told Mr. Gauntt.
Mr. Bailey: (counsel for defendant) He answered your question, your Honor please.
The Court: Yes, he did.
Q. You know Mr. Gauntt when you see him, don't you?
A. Yes.
The Court: Very well.
Up to this point in the trial no evidence of any kind was introduced to indicate that Cole had ever made the alleged statement to Gauntt implicating defendant. This line of questioning was not followed up by the prosecutor by calling Gauntt, who was available, or by producing any evidence to contradict Cole's statement. The question, coming as it did from the court, certainly had the tendency to make the jury believe that Cole made the statement involving defendant. The resulting prejudice to defendant is obvious.
A trial judge is looked upon by jurors as the symbol of justice. While he may, and often has the duty to intervene in the trial, he must exercise his power with extreme delicacy and caution. It was vividly stated by the court thusly:
*105 The trial judge is an imposing figure. To the jurors he is a symbol of experience, wisdom, and impartiality. If he so intervenes as to suggest disbelief, the impact upon the jurors may be critical. Hence in the usual case it is well to leave the primary burden of examination with counsel and to supplement their efforts, if necessary to clarify the scene, in a way which will lead the jurors to believe the objective is their better understanding. [State v. Guido, 40 N.J. 191 at 208, 191 A.2d 45 at 54 (1963)]
(2) The State's proofs amply revealed a breaking and entry but no proof was offered to sustain the count for larceny. In summation, the prosecutor told the jury:
* * * I am going to suggest to you on the second count, which is the larceny count, perhaps there is not enough evidence. It's the first time I have done this since I have been prosecutor, and I am going to suggest after deliberation perhaps you ought to return a verdict of not guilty on that count. * * *
The court, in its charge, commented on the prosecutor's suggestion, and in telling the jury that he didn't recall any testimony on the larceny count prefaced his comment by saying "I am rightfully proud of the prosecutor * * *."
In discussing the role of the police in apprehending defendant the court commented in its charge:
* * * I am mighty proud of our policemen, young kids [referring to the police] are fairly courageous apparently, he looked through the window and saw legs through a ceiling * * *.
These comments by the court concerning the prosecutor and the police placed the weight of his office on the side of the State. This form of comment was severely criticized and held to be prejudicial in State v. Jones, 104 N.J. Super. 57, 65 (App. Div. 1968).
(3) The court, after instructing the jury as to its proper function as fact finders, ended that part of his charge by saying, "Now, it shouldn't be hard in this case, it shouldn't be hard at all." Near the end of the charge, when discussing the jurors' function to decide the breaking and entry count, he again stated, "You heard it [the facts] and it shouldn't *106 be any trouble whatsoever, none at all. The case wasn't a long case, it's a short case * * *."
When defense counsel objected to these comments as being unfair and prejudicial, the court supplemented the charge and explained to the jury that he was referring only to the fact that the case did not take very long to try. It is very doubtful that such supplementary limiting instructions cured whatever harm had resulted. State v. Green, 46 N.J. 192, 196, 197 (1965).
(4) The court on its own initiative charged the jury on how to treat with the testimony of an accomplice. Cole having exonerated defendant, the court should not have given the "accomplice" charge. State v. Gardner, 51 N.J. 444 (1968); State v. Anderson, 104 N.J. Super. 18 (App. Div. 1968), aff'd 53 N.J. 65 (1968). The court in Anderson refused to invoke the plain error rule since no objection was made to the charge, but the court was careful to note that the judge in his charge did not use the term "accomplice." In the instant case the court used the term "accomplice" in three different places. This portion of the charge ended with this admonition:
* * * Therefore, you may consider whether he [Cole] has a special interest in the outcome of the case and whether his testimony was influenced by the hope or expectation of any favorable treatment or reward of any feelings of revenge or reprisal * * *.
The inconsistency of the above quoted portion of the charge is apparent. Cole could have no hope or expectation of favorable treatment or reward at the hands of the prosecutor, since his testimony favored defendant. Against whom would Cole have any feeling of revenge or reprisal? Certainly not defendant, and hardly likely the State. It is because an "accomplice" charge just does not make sense where the witness exonerates a defendant that its giving was condemned by the courts in Anderson and Gardner. Even in the classical situation where a co-defendant turns state's evidence and implicates the defendant being tried, the trial *107 judge should normally not give the "accomplice" charge unless requested to do so by defendant; and when given he should avoid the "use of the term `accomplice', with its rather opprobrious connotation against a defendant * * *." State v. Begyn, 34 N.J. 35, 55, 167 A.2d 161, 171 (1961).
(5) During the jury's deliberations they were returned to the courtroom, at which time the court answered the question they posed to him. While the jury was still in the courtroom one of the jurors asked to be disqualified. The court summarily denied it without ascertaining the reasons for the request. Without indulging in improper speculation we will never know the juror's reasons for making the request. The court should have ascertained the basis for the juror's request, on the record, in the absence of the balance of the jury, but in the presence of all counsel. If the basis was a proper one the court should have declared a mistrial  if improper he could have returned the jurors to their deliberations after properly instructing them.
Even if these errors considered separately might not be sufficiently prejudicial to warrant a reversal of the conviction, collectively they denied the defendant the fair trial to which he was entitled.
Reversed and remanded for a new trial.