745 A.2d 570 (2000)
328 N.J. Super. 236
STATE of New Jersey, Plaintiff-Respondent,
v.
Troy SWINT, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Corey Smith, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 2000.
Decided February 15, 2000.
*574 Alan Dexter Bowman, for defendant-appellant Troy Swint (Brown & Brown, attorneys; Mr. Bowman, of counsel and on the brief).
Barbara Hedeen, Assistant Public Deputy Public Defender, for defendant-appellant Corey Smith (Ivelisse Torres, Public Defender, attorney; Ms. Hedeen, of counsel and on the brief).
Russell J. Curley, Deputy Attorney General, for plaintiff-respondent (John J. Farmer, Jr., Attorney General, attorney; Mr. Curley, of counsel and on the brief).
Before Judges STERN, WEFING and STEINBERG. *571 *572
*573 The opinion of the court was delivered by STEINBERG, J.A.D.
These two appeals arise out of the same indictment and were argued together. We, therefore, consolidate them for the purposes of this opinion.
An Essex County Grand Jury returned Indictment No. 3475-10-96, charging defendants with second-degree conspiracy to commit kidnapping, aggravated assault and/or murder, N.J.S.A. 2C:5-2, N.J.S.A. 2C:13-1, N.J.S.A. 2C:12-1(b)(2), and N.J.S.A. 2C:11-3 (count one); first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1) (count two); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count three); first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3 (count four); second-degree burglary, N.J.S.A. 2C:18-2 (count five); fourth-degree possession of a weapon under circumstances not manifestly appropriate for such lawful uses as it may have, N.J.S.A. 2C:39-5(d) (count six); third-degree possession of a weapon, a sharp instrument, with a purpose to use it unlawfully against the person or property of another, N.J.S.A. 2C:39-4(d) (count seven); third-degree possession of a handgun without first having obtained a permit to carry, N.J.S.A. 2C:39-5(b) (count eight); and second-degree possession of a handgun with a purpose to use it unlawfully against the person or property of another, N.J.S.A. 2C:39-4(a) (count nine).[1]
A jury found defendants guilty of first-degree kidnapping, count two; second-degree aggravated assault, count three; third-degree possession of a weapon for an unlawful purpose, count seven; and second-degree possession of a handgun for an unlawful purpose, count nine. The jury found defendants not guilty on the remaining counts of the indictment.
Each defendant had a prior Graves Act conviction. N.J.S.A. 2C:43-6(a). Accordingly, they were each subject to mandatory extended terms on counts two, three, and *575 nine which are Graves Act offenses. See N.J.S.A. 2C:43-6(c), N.J.S.A. 2C:43-7(c), and N.J.S.A. 2C:44-3(d). The judge merged each defendants' convictions under counts seven and nine into counts two and three and then sentenced each defendant to life imprisonment with twenty years to be served without parole on count two. He also sentenced each defendant to a consecutive term of imprisonment of twenty years, with ten years to be served without parole on count three. The judge also imposed a Safe Neighborhood Services Fund assessment of $75.00 on each count upon each defendant. Finally, he imposed an assessment against each defendant of $500 in favor of the Victims of Crime Compensation Board (VCCB) on count two, and an additional VCCB assessment of $2,000 on count three. Defendants appeal. We affirm, but remand for resentencing.
According to the State's proofs, on June 18, 1996, at approximately 5:30 p.m., Chea Smith, Corey Smith's brother, was shot to death in Newark, New Jersey. Shortly after the shooting, Corey Smith was advised that two individuals with the street names of Drea and Wise had killed Chea. Drea and Wise were friends of Rashon Grundy, who was the victim of the crime involved in these appeals.
Later that evening, Corey Lewis, accompanied by Smith, borrowed a U-Haul truck from Lewis' cousin, James Harris. On June 19, 1996, at approximately 12:30 a.m., the victim was sitting in his living room when he heard a "big boom". Five individuals ran into his house wearing ski masks and carrying guns. According to Grundy, they threatened all the residents in the home and instructed them not to move or make sounds. One of the men pointed a gun at the victim and said, "you coming with us." While the victim was being forcefully removed from his home, a plastic garbage bag was placed over his head and one of the assailants struck him in the head with a gun. They demanded that the victim take them to Wise's home. They took the victim from his home, and put him in the back of the U-Haul.
While in the back of the U-Haul, the victim noticed a broken black lamp lying on the floor of the truck. After the truck was driven a short distance it stopped, and the victim was removed from the truck and taken inside an abandoned apartment building to the third floor, and told to get on his knees. A mask was placed over his head. One of the assailants cut the victim's ear. The victim took off his mask and saw Swint standing by the window. A sheet was placed over the victim's head and one of the assailants kept asking "who killed my brother", "where do Wise live at?", "where do Andre live at?", and "where Andre girlfriend live at?". When he told the assailants he did not know where these people were, the assailants began to torture him. They cut off his ears, cut his back, neck, hand and arm, and shot him above the knee and in the ankle.
When the victim realized that the room was quiet, he was able to struggle down the stairs, out of the building, and managed to get around the corner to his brother's house.
Janyne Morris, who lived with Edward Grundy, the victim's brother, testified that on June 19, 1996, at 2:00 a.m., she was asleep but heard someone tapping on the window. She answered the door and observed the victim crying, screaming, and covered with blood. In the colloquy that preceded her testimony, it was clear that her testimony as to what the victim told her was offered as an excited utterance pursuant to N.J.R.E. 803(c)(2). She then testified, without objection, that the victim said "Rajhon[2] and them" caused his injuries.
The State also called Edward Grundy who testified that he was "awakened by [his] girlfriend who said there was something wrong with my brother". He said he *576 jumped up, went into the dining room and observed his brother bleeding and crying. Without objection, he testified that the victim said "Rajhon and them kicked in mommy door". Edward found some clothes to put on and they all went to the car intending to go to the hospital. However, the victim said "[h]e wanted to go to check on my mother and my sisters". At that point, counsel for Swint objected to any further testimony regarding statements made by the victim since too much time had elapsed and there was an insufficient foundation to justify the admission of the testimony under N.J.R.E. 803(c)(2). The judge directed the prosecutor to lay the appropriate foundation for the admission of the testimony.
Edward then again testified that the victim arrived at his house between 1:30 a.m. and 2:00 a.m. crying and bleeding. Edward changed his clothes and they got into the car. The victim was in the home for approximately three minutes. While in the car, blood was running down the victim's face and he told Edward that he was shot in the leg. The victim had no shoes, and his pants and shirt were ripped. Blood was all over him. He was crying and worrying about going to see his mother. Overruling Swint's objection, the judge concluded that the victim was still under the stress of the excitement caused by the incident without opportunity to deliberate or fabricate and determined that Edward could testify as to what the victim said, deeming the testimony admissible as an excited utterance. N.J.R.E. 803(c)(2). Edward said that the victim told him Troy and Rajhon had participated in the incident. He said the victim knew " ... it was Troy `cause Troy off his mask". He further said Rajhon asked him "who killed my brother".
Newark Detective Calvin Parkman testified that he was dispatched to the hospital on June 19, 1996, at approximately 1:30 a.m. He met the victim who described to Parkman what had happened to him. Without objection, Parkman testified that the victim told him Rajhon Muhammed, who was also known as Corey Smith, and a person named Troy committed the assault. The victim did not know Troy's last name. He also testified that the victim knew it was Rajhon Smith "by the fact that, number one, he said he knew him for approximately a year. He said he knew him for... he associated him for a year and he said his inflections, his voice, his mannerisms, you know, and the fact that he was saying who killed my brother, he recognized the voice". Parkman also said that the victim told him that Troy pulled his mask off and he was able to look "right in his face".
Parkman further testified that the U-Haul was recovered at approximately 4:00 a.m. In the cab of the truck he observed two brown cloth gloves that had "smears of blood on it". Next to the gloves he observed a black ski mask. There were blood smears on the interior wall of the rear of the truck. He also observed a black lamp in the rear of the truck that was exactly as the victim had described it. There was also a garbage bag in the rear of the truck. The investigation revealed that the truck had been rented by James Harris. At approximately 5:30 a.m., Harris was taken to the police station to be interviewed. Harris told the police that he had rented the truck but had lent it to his cousin, Corey Lewis. Harris also stated that Lewis had been accompanied by Smith at the time the truck was picked up at approximately 9:30 p.m.
Later that morning, between 8:20 a.m. and 9:00 a.m., Parkman and other officers arrested Smith and Swint who were traveling together in an automobile. Parkman also testified that they recovered a box-cutter in the front of the vehicle. He was unable to state the specific location of the box-cutter other than it was in the front of the vehicle.
On his appeal, defendant Smith raises the following arguments:
POINT I BECAUSE THERE WAS NO EVIDENCE TO LINK THE BOX *577 CUTTER, WHICH WAS FOUND IN THE CAR DEFENDANT WAS OCCUPYING AT THE TIME OF HIS ARREST, TO THE CRIMES CHARGED, THE TRIAL COURT ERRED IN ALLOWING THE STATE TO ELICIT TESTIMONY REGARDING ITS DISCOVERY, THEREBY DEPRIVING DEFENDANT OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW. U.S. CONST. AMEND. V, VI, XIV; N.J. CONST. ART. I, PAR. 1, 10.
POINT II THE ADMISSION OF JAMES HARRIS' PRIOR INCONSISTENT STATEMENT WAS CONTRARY TO STATE V. GROSS, 121 N.J. 1, 577 A.2d 806 (1990), AND DENIED DEFENDANT A FAIR TRIAL AND HIS RIGHT TO CONFRONTATION. U.S. CONST. AMEND. VI; N.J. CONST. ART I, PAR. 10.
POINT III THE TRIAL JUDGE ERRED IN FAILING TO SUFFICIENTLY TAILOR THE IDENTIFICATION CHARGE TO POINT OUT THE INCONSISTENCIES IN THE ACCOUNTS OF THE VARIOUS WITNESSES. (Not Raised Below).
POINT IV THE PROSECUTOR'S CONDUCT THROUGHOUT THE TRIAL DEPRIVED DEFENDANT OF A FAIR TRIAL. U.S. CONST. AMEND. XIV; N.J. CONST. ART. I, PAR. 1, 10. (Partially Raised Below).
A. Aggrandizement Of Wounds And Glorification Of Victim.
B. Accuracy Of Voice Identification.
C. Defendant's Supposed Threats Against A Witness.
D. Four-Hour Search For Killers.
POINT V THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING DEFENDANT TO CONSECUTIVE TERMS OF IMPRISONMENT TOTALING LIFE PLUS TWENTY YEARS WITH THIRTY YEARS OF PAROLE INELIGIBILITY AND IN ORDERING DEFENDANT TO PAY $2,500.00 IN VIOLENT CRIME COMPENSATION BOARD PENALTIES.
A. In Imposing A Consecutive Sentence For Assault, The Trial Court Improperly Fractionalized This One Continuous Incident Into Separate Events And Thus Did Not Comply With State v. Yarbough, 100 N.J. 627, 498 A.2d 1239 (1985).
B. The VCCB Penalties Are Excessive And Were Imposed With No Statement Of Reasons.
On his appeal, defendant Swint raises the following arguments:
POINT I THE TRIAL COURT ERRED IN ADMITTING THE BOX-CUTTER INTO EVIDENCE AND DENIED APPELLANT A FAIR TRIAL.
POINT II APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL (Not Raised Below).
POINT III THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ADMITTING PRIOR CONSISTENT STATEMENTS ABSENT THE APPROPRIATE LIMITING INSTRUCTION TO THE JURY (Not Raised Below).
We first consider the argument raised by each defendant that the trial judge *578 erred in allowing the box-cutter to be admitted into evidence and allowing the State to elicit evidence regarding its discovery. We reject those contentions. Once Parkman identified the box-cutter at trial, each defense attorney objected on relevancy grounds. They contended that no blood had been found on the box-cutter; it had not been subjected to DNA testing; no fingerprints were found on the box-cutter, and there was no evidence that it was an instrument of the crimes committed against the victim. Finally, they argued that N.J.R.E. 403 required its exclusion since the probative value of the evidence was substantially outweighed by the risk of undue prejudice.
The trial judge observed that since the box-cutter was found in a vehicle occupied by defendants, it could be relevant regarding counts six and seven of the indictment charging defendants with possession of a certain weapon, a sharp instrument, under circumstances not manifestly appropriate for such lawful uses at it may have, N.J.S.A. 2C:39-5(d), and possession of a weapon, a sharp instrument, with a purpose to use it unlawfully against the person or property of another, N.J.S.A. 2C:39-4(d). Defendants responded that was not the State's theory, i.e., that defendants could be convicted of counts six and seven by virtue of their possession of the box-cutter at the time of their arrest. Moreover, they argue on appeal that the case was not presented to the Grand Jury under that theory. The judge concluded that at that point the State was not offering the box-cutter into evidence and that he would permit testimony regarding its discovery. At the end of the State's case, the judge allowed the box-cutter to be introduced into evidence subject to the objections voiced earlier by each defendant.
In his charge to the jury, the trial judge never suggested to the jury that it could convict defendants on counts six and seven based upon their possession of the box-cutter at the time of their arrest. Indeed, the trial judge charged the jury as follows: "In this case the State contends that the defendants' unlawful purpose in possessing the weapon was to assault and/or to attempt to murder Rashon Grundy."
Moreover, in the assistant prosecutor's summation which consumed nearly thirty-three pages, she only made two brief references to the box-cutter. They are as follows:
and lo and behold, at approximately 8:20 that morning Rajhon and Troy are in the vehicle for which Rajhon has identified as driving, [sic] and that's where the box-cutter is recovered from. What is the purpose of a box-cutter? Think about it, ladies and gentlemen.
At the very end of her summation, in mentioning each count of the indictment and urging the jury to return a finding of guilty, when mentioning possession of a weapon for an unlawful purpose, she stated:
And what was that purpose? Think about that sharp object. What is he doing with a box-cutter and what can a box-cutter do to you? Most importantly, [defense counsel] brought it out, was any DNA done, any blood sample? But if you can recall, I said to Detective Parkman, what observations did you make? Was there any blood on that box-cutter? No. What are you going to test if there is no blood on the box-cutter? What do you want to test? Thank you.
In addition, defense counsel, in their summations, forcefully argued that there was no evidence to connect the box-cutter to the assault upon the victim. They argued that there was no attempt to lift fingerprints from the box-cutter; there was no DNA evidence; there was no expert testimony to "say the wounds that were inflicted on the victim in this case are consistent with the type of instrument within a reasoned [sic] degree of medical probability".
*579 They also argued that the State did not prove the exact location of the box-cutter in the car, and whose car it was. Clearly, the case was not presented to the jury by counsel, or the judge, under a theory that defendants could be convicted of possession of the box-cutter, and possession of it with the purpose to use it unlawfully against the person of another, based upon their possession at the time of the arrest. Accordingly, we reject defendants' contention that the admission of the box-cutter subjected them to a possible conviction for an offense other than the offense that was presented to the Grand Jury. See State v. Wolden, 153 N.J.Super. 57, 60, 378 A.2d 1174 (App.Div.1977) (defendant may not be convicted of a criminal offense that is essentially different from that set forth in the indictment).
Moreover, we conclude that the testimony that the box-cutter was discovered in an automobile occupied by both defendants within eight hours after the commission of the crime was relevant and properly admitted. In addition, the box-cutter itself was properly admitted. In New Jersey, we have a broad test of relevancy. State v. Deatore, 70 N.J. 100, 116, 358 A.2d 163 (1976). Evidence is relevant if it has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action". N.J.R.E. 401.
In determining whether evidence is relevant, the inquiry should focus upon the logical connection between the proffered evidence and a fact in issue. State v. Hutchins, 241 N.J.Super. 353, 358, 575 A.2d 35 (App.Div.1990). If the evidence offered renders the desired inference more probable than it would be without the evidence, it is relevant. State v. Davis, 96 N.J. 611, 619, 477 A.2d 308 (1984); State v. Coruzzi, 189 N.J.Super. 273, 302, 460 A.2d 120 (App.Div.), certif. denied, 94 N.J. 531, 468 A.2d 185 (1983). A jury may draw an inference from a fact whenever it is more probable than not that the inference is true. State v. Brown, 80 N.J. 587, 592, 404 A.2d 1111 (1979); State v. Smith, 210 N.J.Super. 43, 49, 509 A.2d 206 (App.Div.), certif. denied, 105 N.J. 582, 523 A.2d 210 (1986). If the evidence offered makes the inference to be drawn more logical, the evidence should be admitted unless otherwise excludable by law. State v. Covell, 157 N.J. 554, 565, 725 A.2d 675 (1999). The evidence need not by itself support or prove the fact in issue. State v. Coruzzi, supra, 189 N.J.Super. at 302, 460 A.2d 120. Moreover, the veracity of each inference need not be established beyond a reasonable doubt in order for the jury to draw the inference. State v. Brown, supra, 80 N.J. at 592, 404 A.2d 1111; State v. Smith, supra, 210 N.J.Super. at 49, 509 A.2d 206. Finally, circumstantial evidence need not preclude every other hypothesis in order to establish guilt beyond a reasonable doubt. State v. Mayberry, 52 N.J. 413, 436, 245 A.2d 481 (1968), cert. denied, 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969); State v. Smith, supra, 210 N.J.Super. at 49, 509 A.2d 206.
Given our broad test of relevancy, we conclude that the box-cutter had a tendency in reason to prove a fact of consequence. Specifically, it had a tendency in reason to establish that these defendants, who were arrested in an automobile within eight hours of the commission of the offense, were, in fact, in possession of it at the time of the assault upon the victim. The failure to more specifically link the box-cutter with the offenses goes to the weight of the evidence, not its admissibility. The State was only required to show sufficient circumstances to justify an inference by the jury that the box-cutter was likely to have been used in the commission of the crime charged. State v. Ricks, 326 N.J.Super. 122, 129, 740 A.2d 697 (App. Div.1999). A weapon found on defendant when he is arrested is admissible if some connection to the crime can be shown. Ibid. The judge did not mistakenly exercise his discretion in permitting the box-cutter to be admitted into evidence.
*580 Moreover, the judge did not mistakenly exercise his discretion in not excluding the evidence pursuant to N.J.R.E. 403. The party seeking to preclude the admission of evidence pursuant to N.J.R.E. 403 has the burden of convincing the trial judge that the factors favoring exclusion substantially outweigh the probative value of the contested evidence. State v. Morton, 155 N.J. 383, 453, 715 A.2d 228 (1998). The mere possibility that evidence could be prejudicial does not justify its exclusion. Id. at 453-54, 715 A.2d 228. Damaging evidence usually is very prejudicial, but the real question is whether the risk of undue prejudice is too high. State v. Bowens, 219 N.J.Super. 290, 296-97, 530 A.2d 338 (App.Div.1987). Whether the probative value of the evidence is outweighed by the potential prejudice is a decision left to the discretion of the trial judge. State v. Carter, 91 N.J. 86, 106, 449 A.2d 1280 (1982). In performing the weighing process envisioned by N.J.R.E. 403, the trial judge's discretion is a broad one. State v. Sands, 76 N.J. 127, 144, 386 A.2d 378 (1978). On appellate review, the decision of the trial judge must be affirmed unless it can be shown that he palpably abused his discretion. State v. Carter, supra, 91 N.J. at 106, 449 A.2d 1280. Given our limited scope of appellate review of discretionary decisions of a trial judge regarding the failure to exclude evidence under N.J.R.E. 403, we conclude that the judge did not mistakenly exercise his discretion in denying defendant's application to invoke the rule and exclude the box-cutter.
We next comment briefly upon defendants' contention that the improper admission of the box-cutter rendered the trial unfair. Since we have concluded that the box-cutter was properly admitted, we obviously reject that contention. Moreover, defendants' argument completely ignores the fact that the jury acquitted them of possession of the box-cutter as a weapon under circumstances not manifestly appropriate for such lawful uses as it may have, as well as possession of a weapon, a firearm, without a permit to carry; conspiracy; attempted murder; and burglary. Clearly the jury was not swayed by the admission of the box-cutter into evidence and was able to look objectively at all the evidence and render an impartial verdict. We reject as sheer speculation Swint's contention, raised at oral argument, that perhaps the jury compromised by finding defendant not guilty of some offenses and guilty of other offenses, and the compromise was due to the improper admission of the box-cutter.
We now turn to defendants' contention that the trial judge incorrectly allowed the State to introduce evidence of James Harris' prior inconsistent statement. Specifically, they contend that the statement was not given in circumstances establishing its reliability. N.J.R.E. 803(a)(1). At trial, James Harris recanted the statement he gave to the police, contending that it was physically coerced. The trial judge conducted a hearing pursuant to N.J.R.E. 104(a), rejected defendants' contentions, and concluded that given the circumstances that existed when the prior statement was made, it was sufficiently reliable, and, therefore, admissible. We conclude that defendants' contention is clearly without merit. See R. 2:11-3(e)(2). The trial judge carefully considered the evidence adduced at the Rule 104(a) hearing and concluded that the statement was admissible. There is more than ample evidence in the record to support that conclusion. Moreover, we are constrained to defer to the trial court's credibility determinations that are often influenced by observations of the character and demeanor of witnesses which cannot be transmitted by a dry record. State v. Locurto, 157 N.J. 463, 474, 724 A.2d 234 (1999). In addition, the judge clearly instructed the jury that it must carefully examine and assess Harris' prior inconsistent statement in light of all the surrounding circumstances, including his interest in giving the statement at that time. During the course of his instructions, the judge set forth the *581 factors that are relevant to a determination of the reliability of the statement as those factors are set forth in State v. Mancine, 124 N.J. 232, 248, 590 A.2d 1107 (1991) and State v. Gross, 121 N.J. 1, 10, 577 A.2d 806 (1990).
We next consider Swint's contention that the trial judge "committed reversible error in admitting prior consistent statements absent the appropriate limiting instruction to the jury". We disagree.[3] First of all, the record clearly establishes that the statements attributed to the victim by his brother Edward, and Edward's friend, Janyne Morris, were admitted not as prior consistent statements pursuant to N.J.R.E. 803(a)(2), but, rather, as excited utterances pursuant to N.J.R.E. 803(c)(2). Thus, no limiting instruction was necessary. Parkman's testimony regarding statements made to him by the victim was not objected to at trial. We are unable to discern the basis for their admission,[4] but conclude that there was no plain error in admitting them.
In the absence of an objection, we must analyze Swint's contention in the context of the plain error rule. R. 2:10-1 State v. Timmendequas, 161 N.J. 515, 576, 737 A.2d 55 (1999). Defendant must establish not only that there was error, but also that it was clearly capable of producing an unjust result. Ibid.; State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971). The possibility of an unjust result is not any possibility; the possibility must be sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached. State v. Macon, supra, 57 N.J. at 336, 273 A.2d 1. We may infer from the lack of an objection that counsel recognized that the alleged error was of no moment or was a tactical decision to let the error go uncorrected at the trial. Id. at 337, 273 A.2d 1. We conclude that if there was error in the admission of Parkman's testimony, it was harmless, since his testimony regarding the victim's identification of defendants was cumulative to the testimony of the victim, his brother, Edward, and Janyne Morris. Moreover, as we have previously noted, counsel effectively cross-examined Parkman regarding the inconsistencies between the description of the assailants given him by the victim and the actual physical description of defendant, and forcefully argued the inconsistencies to the jury.[5]
We next consider Smith's contention that the trial judge erred in failing to tailor sufficiently the identification charge and point out inconsistencies in the accounts of the various witnesses. Preliminarily, we see no evidence in the record that requests to charge were made pursuant to R. 1:8-7(a). *582 Prior to summations, a charge conference was conducted pursuant to R. 1:8-7(b). The judge advised that he would charge on the question of identification. Counsel did not ask that the judge tailor the charge to the facts of the case and point out any inconsistencies in the evidence regarding identification. Accordingly, Smith's challenge to the charge must also be considered in the context of the plain error rule, as previously discussed. R. 2:10-2. In addition, counsel made no objection to the charge. See R. 1:7-2. Again, the failure to object suggests that counsel perceived the alleged error to be of no moment, and deprived the trial judge an opportunity to consider the objection and, if appropriate, remedy the instructions. State v. Wilbely, 63 N.J. 420, 422, 307 A.2d 608 (1973); Bradford v. Kupper Associates, 283 N.J.Super. 556, 573-74, 662 A.2d 1004 (App.Div.1995), certif. denied, 144 N.J. 586, 677 A.2d 759 (1996).
The judge charged the jury on identification as follows:
The defendants, as part of their general denial of guilt, contend that the State has not presented sufficient reliable evidence to establish beyond a reasonable doubt that the defendants are the persons who committed the alleged offenses. Where the identity of persons who committed the crime is in issue, the burden of proving that identity is upon the State. The State must prove beyond a reasonable doubt that these defendants are the persons who committed the crimes. The defendants have neither the burden nor the duty to show that the crimes, if committed, were committed by someone else or to prove the identity of the other person. You must decide therefore not only whether the State has proven each and every element of the offense as charged beyond a reasonable doubt, but also whether these defendants are the persons who committed them.
To meet the burden with respect to the identification of the individuals the State has presented the testimony of Rashon Grundy. You will recall that this witness identified the defendants as the persons who committed the offenses. According to Mr. Grundy, the identification of the defendants in court was based upon observations and perceptions which he made of the defendants at the scene at the time the offenses were being committed. It is your function as jurors to decide what weight if any to give to this testimony. You must decide whether it is sufficiently reliable evidence upon which to conclude that these defendants are the persons who committed the offenses charged.
In going about your task, you should consider the testimony in light of the factors concerning credibility, as I've already explained them to you. It is particularly appropriate that you consider the capacity and the ability of the witnesses to make observations or perceptions. You should consider the opportunity which a witness had at the time and under all the attendant circumstances for perceiving what the witness claims to have seen or perceived concerning the identification of the persons who committed the alleged offenses. You may also wish to consider the witness' degree of attention at the time to [sic] the incident, the accuracy or inaccuracy of the witness' description at the time of the incident, the witness' certainty, and the length of time before the crimebetween the crime and the identification among other factors.
In-court identifications may result from a witness' observations or perceptions of the defendants during the commission of the crime or may be the product of an impression gained at an out-of-court procedure. If it is only the product of an impression gained at an out-of-court procedure, you give it no weight. Thus the ultimate issue of the trustworthiness of in-court identification is for you as the jury to decide.
If after a consideration of all of the evidence you have a reasonable doubt as *583 to the identity of either or both of the defendants as the persons present at the time and place the crimes were committed, you must acquit that or those defendants. If, however, after a consideration of all the evidence you are convinced beyond a reasonable doubt of the defendants' presence at the scene, you will then consider whether or not the State has proven each and every element of the offenses charged beyond a reasonable doubt.
Defendants essentially rely upon State v. Edmonds, 293 N.J.Super. 113, 679 A.2d 725 (App.Div.1996), certif. denied, 148 N.J. 459, 690 A.2d 606 (1997), in urging that reversal is required where the judge fails to tailor the identification charge to the facts of the case. We disagree. To be sure, in Edmonds, supra, another panel of this court held that the trial judge's identification instruction was misleading when it referred only to the fact that the State relied upon the victim's in-court identification of defendant and that it was based upon her observations and perceptions made at the scene at the time the offenses were committed. The Edmonds court held that since identity was a crucial issue, the trial court committed reversible error in failing to specifically tailor the charge to the facts of the case by referring not only to the victim's in-court identification of defendant and his accomplice, but also to her "glaringly" inconsistent out-of-court identification of defendant to an investigating officer, as well as her inconsistent versions as to the roles each defendant had in the commission of the offense. State v. Edmonds supra, 293 N.J.Super. at 118, 679 A.2d 725.
In State v. Malloy, 324 N.J.Super. 525, 736 A.2d 532 (App.Div.1999), another panel of this court reversed a conviction when the trial court failed to discuss the evidence regarding identification in his charge to the jury. Although the judge's truncated version of the identification instruction was deemed to require reversal, the court went on to hold that the judge was required to point out in his instruction to the jury on identification the evidence introduced which cast doubt upon the identification of defendant. Id. at 535-36, 736 A.2d 532.
On the other hand, a third panel of this court recently held that a judge is not required to give special credibility instructions on the issue of identification when questions regarding the reliability of the identification were adequately developed during the trial, particularly by way of cross-examination of the identification witnesses, and on summations. State v. Walker, 322 N.J.Super. 535, 547-50, 731 A.2d 545 (App.Div.), certif. denied, 162 N.J. 487, 744 A.2d 1209 (1999). The Walker court also rejected defendant's contention that the trial judge was required to give a jury instruction summarizing inconsistencies between the victim's in-court identification of defendants and her description of the perpetrators given shortly after the commission of the crimes. Id. at 552, 731 A.2d 545.
There is a significant difference between a trial judge's explaining the applicable law to the jury and in providing guidance to the jury concerning its fact-finding responsibilities. State v. Walker, supra, 322 N.J.Super. at 548, 731 A.2d 545. Thus, there is a greater need to relate jury instructions to the facts of the case regarding the legal concepts the jury will be required to apply than the evaluation of witness credibility. Ibid. We recognize that where identification is a central issue, it is reversible error for the trial judge not to give an instruction which specifically addresses the jury's evaluation of identification testimony. State v. Green, 86 N.J. 281, 291-92, 430 A.2d 914 (1981). Here, the trial judge's charge essentially complied with Green, supra, and the Model Jury Charge on identification. The charge was accurate and thorough and adequately explained the law. Moreover, the judge gave a general charge on credibility and referred to it in his identification charge.
A corollary to the right of a judge to comment on the evidence, is the right not to comment on the evidence. State v. Biegenwald, 106 N.J. 13, 44, 524 *584 A.2d 130 (1987). Judges are, and should be, reluctant to comment extensively on the facts developed during the trial. When they do, they run the risk of being perceived by the jury, as well as the parties, as an advocate. For example, in fairness, if a judge comments upon the strengths of a party's position, he or she should also comment on the weaknesses of that position. Obviously, the judge will not be able to mention all the facts that were developed during the trial. The roles of the judge, prosecutor and defense attorney are distinct. The attorneys are advocates for the respective sides, while the judge is to be the neutral adjudicator. State v. Avena, 281 N.J.Super. 327, 336, 657 A.2d 883 (App.Div.1995). The judge must remain impartial and detached and may not "take sides". State v. Santiago, 267 N.J.Super. 432, 437, 631 A.2d 997 (Law Div.1993). The trial judge possesses a broad discretion as to his or her participation in the trial, but simultaneously must also maintain an atmosphere of impartiality. State v. Ray, 43 N.J. 19, 25, 202 A.2d 425 (1964). Because a trial judge is looked upon by jurors as the symbol of justice, he or she must exercise the right to intervene in the trial with extreme delicacy and caution. State v. Lemon, 107 N.J.Super. 101, 104, 257 A.2d 123 (App. Div.1969). If a judge chooses to comment upon the relative strengths or weaknesses of the identification testimony, he or she runs the risk of being perceived by the jurors as favoring one side over the other. This unintended result could have an effect on how the jury views the testimony of the witness. Although a judge has no more ability to credit or discredit the testimony of a witness, a juror may perceive the judge as being more experienced in assessing credibility.
In addition, if a judge comments on some of the facts, a juror may conclude that because the judge did not mention a fact that the juror deems critical, that fact is of no consequence. We believe, in particular, commenting on the relative strengths or weaknesses of the identification is best left to the attorneys rather than the judge. The judge must remain at all times the impartial arbiter. Just as important, the jury must perceive the judge to be the impartial arbiter. Here, the relative strengths and weaknesses of the identification of defendant were forcefully argued by the attorneys. We therefore conclude that the trial judge did not err, let alone commit plain error, in failing to comment sua sponte on the testimony and evidence regarding identification. We believe that a trial judge should leave the advocacy of the relative strengths and weaknesses of the identification to the partisans, namely the parties, and should refrain from invading their province. We, therefore, conclude that a trial judge should not be reversed for failing to comment sua sponte and point out the relative strengths or weaknesses of the identification testimony.
We next consider Smith's contention that the prosecutor's conduct throughout the trial deprived him of a fair trial. We reject that contention as clearly without merit. See R. 2:11-3(e)(2). We recognize that although a prosecutor is entitled to sum up the State's case graphically and forcefully, nevertheless, his or her summation is limited to commenting upon the evidence and the reasonable inferences to be drawn therefrom. State v. Feaster, 156 N.J. 1, 58-59, 716 A.2d 395 (1998). Here, the challenged comments were arguably either based upon the evidence, or constituted a plea to the jury to draw inferences that were reasonable from the evidence introduced during the trial. Even if some of the challenged comments may have crossed the line, they were not sufficiently egregious to require a reversal of the conviction. While a defendant is entitled to a fair trial, he is not entitled to a perfect trial. State v. Feaster, 156 N.J. 1, 84, 716 A.2d 395 (1998); State v. Loftin, 146 N.J. 295, 397, 680 A.2d 677 (1996). Accordingly, prosecutorial misconduct is only grounds for reversal of a conviction if it was so egregious that it deprived defendant of a fair trial. State v. Feaster, supra, 156 N.J. at 59, 716 A.2d 395; State v. Harris, 156 N.J. 122, 194, 716 A.2d 458 *585 (1998). Reviewing the prosecutor's summation in the context of the trial as a whole, as we must, we conclude that to the extent the prosecutor's comments may have crossed the line they were not sufficiently egregious as to deprive defendants of a fair trial.
We next consider Swint's contention that he was denied the effective assistance of counsel. Specifically, he contends that counsel failed in pre-trial preparations to determine that the State would seek to admit the box-cutter into evidence. He contends that a "prepared advocate" could have demonstrated its inadmissibility. Moreover, he contends that defense counsel did not "factor into his consultations with [Swint] the probable effect the box-cutter would have on the trial" and precluded him from formulating a "cogent trial strategy". He also contends that he therefore could not achieve "an informed perspective relative to the appropriateness of accepting any negotiated disposition".
Ordinarily, ineffective-assistance-of-counsel claims are particularly suited for post-conviction review, rather than direct review, because the claims involve allegations and evidence that lie outside the trial record. State v. Preciose, 129 N.J. 451, 460, 609 A.2d 1280 (1992). However, with respect to the claim that had defense counsel been better prepared he would have been able to successfully exclude the box-cutter in evidence, we are able to reject that claim without going beyond the present record because we have concluded that the box-cutter was, in fact, admissible. We decline to rule on the other claims of ineffective-assistance-of-counsel since their resolution may depend upon matters outside the record. Accordingly, defendant may raise them in a petition for post-conviction relief.
Finally, we consider defendants' sentences. Although not raised by the State, as we have previously indicated, each defendant had a prior Graves Act conviction. Therefore, both N.J.S.A. 2C:43-6(c) and N.J.S.A. 2C:44-3(d) subjected them to a mandatory extended term. Moreover, when a sentence of life imprisonment is imposed upon a subsequent Graves Act offender, the judge must impose a period of parole ineligibility of twenty-five years. N.J.S.A. 2C:43-7(c). Compare N.J.S.A. 2C:43-7(b) which essentially provides that when the sentence imposed for an extended term is life, if a period of parole ineligibility is imposed it must be twenty-five years. State v. Pennington, 154 N.J. 344, 357-60, 712 A.2d 1133 (1998); State v. Candelaria, 311 N.J.Super. 437, 452-53, 710 A.2d 545 (App. Div.), certif. denied, 155 N.J. 587, 715 A.2d 990 (1998). Here, the judge imposed a period of parole ineligibility of twenty years on each defendant. Therefore, each sentence is illegal because once the judge decided to impose a sentence of life imprisonment, he was also required to impose a twenty-five-year period of parole ineligibility. The sentences must be corrected for failure to comply with N.J.S.A. 2C:43-7(c). A defendant challenging his underlying conviction and sentence has no legitimate expectation of finality in the sentence. State v. Haliski, 140 N.J. 1, 23, 656 A.2d 1246 (1995). Accordingly, an illegal sentence may be corrected before it is completed or served. State v. Rhoda, 206 N.J.Super. 584, 593, 503 A.2d 364 (App. Div.), certif. denied, 105 N.J. 524, 523 A.2d 167 (1986); State v. Copeman, 197 N.J.Super. 261, 265, 484 A.2d 1250 (App.Div. 1984). Thus, the court may correct an illegal sentence, even by increasing the term. State v. Kirk, 243 N.J.Super. 636, 643, 581 A.2d 115 (App.Div.1990). Therefore, we must vacate the sentences imposed upon each defendant for first-degree kidnapping because they are illegal. Because we believe the sentences on each count for each defendant were, to some extent, interdependent, we likewise vacate the sentences for aggravated assault and remand for resentencing. On remand, the judge must also consider N.J.S.A. 2C:44-1(f)(1), which essentially provides that unless the preponderance of mitigating factors weighs in favor of a lower term, a sentence imposed pursuant to N.J.S.A. 2C:43-7(a)(1) for a first-degree kidnapping *586 shall have a presumptive term of life imprisonment. See also State v. Pennington, supra, 154 N.J. at 356, 712 A.2d 1133.[6]
Since we have vacated defendants' sentences, it is not necessary that we address Smith's contention that the trial judge abused his discretion in sentencing him to consecutive terms and in ordering him to pay a total of $2,500 in VCCB Penalties. However, for the sake of completeness, and for guidance of the parties on resentence, we choose to comment briefly.
While we agree with defendant that the offenses were connected by a "unity of specific purpose", that is, that the kidnapping was committed for the purpose of committing the assault and therefore the crimes were somewhat interdependent of one another, and were committed within a short period of time of one another, that does not necessarily mean that defendant was entitled to concurrent sentences. We recognize that those are some of the factors to be considered in determining whether to impose sentences concurrently or consecutively. State v. Yarbough, 100 N.J. 627, 643-44, 498 A.2d 1239 (1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986). However, those are not the only factors to be considered. The court should also recognize that there should be no free crimes in a system for which the punishment shall fit the crime; it should also consider whether the crimes involve separate acts of violence. Ibid. While we recognize that the offenses were not predominately independent of each other and were committed close in time and place, considering the nature of each offense, the purpose for which they were committed, and the manner in which they were committed, including the maiming of the victim by cutting off each of his ears, shooting him, and stabbing him, our judicial conscience is not the least bit shocked by the imposition of consecutive sentences. In a civilized society, neither of these crimes should be free, as they would be if concurrent sentences were imposed.
Finally, on remand, if the assessments imposed in favor of the VCCB exceed the statutory minimum, the judge must express his reasons for imposing them. State v. Gallagher, 286 N.J.Super. 1, 23, 668 A.2d 55 (App.Div.1995), certif. denied, 146 N.J. 569, 683 A.2d 1164 (1996); State v. Pindale, 249 N.J.Super. 266, 289, 592 A.2d 300 (App.Div.1991).
With the exception of the sentence imposed on each defendant, the convictions are affirmed. We vacate the sentences imposed and remand for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Corey Lewis was also charged in all counts of the same indictment. However, he died prior to trial.
[2] At trial it was developed that Corey Smith also used the name Rajhon.
[3] Indeed, a prior consistent statement offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive may be admitted substantively. See N.J.R.E. 803(a)(2). If admitted substantively, no limiting instruction is necessary.
[4] We note, however, that during his cross-examination of Parkman, counsel for Swint established that the victim was in "shock and discomfort". We note also that the victim's statements to Parkman may have been admissible as well, as a prior consistent statement offered to rebut an express or implied charge of recent fabrication, pursuant to N.J.R.E. 803(a)(2), or as a prior identification made in circumstances precluding unfairness or unreliability, pursuant to N.J.R.E. 803(a)(3). In the absence of a record developing these bases of admissibility, we express no opinion on the admissibility of the testimony under those Rules of Evidence. Moreover, in their cross-examination of Parkman, each defendant effectively brought out inconsistencies between the descriptions Parkman claimed the victim furnished of each defendant, and their actual physical descriptions. Counsel also forcefully argued those inconsistencies in their respective summations. We merely hold that the judge did not commit plain error, under the circumstances of this case, in not sua sponte excluding the testimony.
[5] The failure may have been a tactical decision in order to pursue a claim of misidentification by arguing the inconsistencies to the jury in an effort to raise a reasonable doubt as to identity of defendants as the assailants. If it was not a tactical decision, defendants' right to seek post-conviction relief is preserved.
[6] Since the quantum of the aggregate sentences to be imposed is not mandatory, we suggest that the aggregate sentence imposed on remand should not exceed the aggregate sentence initially imposed. See State v. Rodriguez, 97 N.J. 263, 273-75, 478 A.2d 408 (1984); State v. Espino, 264 N.J.Super. 62, 72, 624 A.2d 27 (App.Div. 1993).