**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2228-17T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROMMEL E. SEDIN

    Defendant-Appellant.

_____

Submitted March 17, 2020 – Decided April 20, 2020

Before Judges Accurso and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 14-06-0716.

Joseph E. Krakora, Public Defender, attorney for appellant (Robert C. Pierce, Designated Counsel, on the brief).

Christopher Kuberiet, Acting Middlesex County Prosecutor, attorney for respondent (Patrick F. Galdieri, II, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Sometime around midnight on June 18, 2012, Antonio Luis-Vasquez left a bar in New Brunswick and entered a green minivan, believing it was the taxi he had just summoned by phone. Defendant Rommel E. Sedin was driving the vehicle; another man was seated in the third row. About twenty minutes later, defendant pulled into a dark alleyway and stopped the minivan. The passenger grabbed Vasquez by the neck; one of the men held a black handgun to his head; both men took his cellphone and all his cash. Laughing, the men struck Vasquez in the face, pushed him out of the minivan, and left him by the side of the road.

During his interview with police the following day, Vasquez identified defendant as the driver. One week later, defendant was arrested outside his family's home while police executed warrants[1] to search the premises and the green minivan parked in front of the house. The minivan was registered to defendant and matched the description of the vehicle used in the robbery. Police

---

[1] Apparently, around the time of this incident, defendant and his brothers, Christopher and Jewell, were under investigation for a string of armed robberies, during which cellphones were stolen from the victims. Police obtained warrants to search several residences and vehicles – including the house where the handgun was found – belonging to defendant and his brothers. Because defendant's brothers share the same surname, we use their first names. We intend no disrespect in doing so.

seized a black 9-millimeter handgun wrapped in a t-shirt from a closet located in Christopher's bedroom.[2]  The house was located two blocks from the robbery scene.

During the course of his arrest, defendant handed his cellphone to his girlfriend, Michelle Velasquez,[3] who refused to surrender the phone to police. Velasquez was arrested.  Police seized three cellphones, including the victim's cellphone during the search incident to her arrest.

Following a six-day jury trial, defendant was convicted of second-degree robbery, N.J.S.A. 2C:15-1(a)(2),[4] as a lesser-included offense of first-degree robbery, and second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1.  The jury acquitted defendant of the remaining charges: second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), second-

---

[2]  Christopher pled guilty to weapons offenses relating to the seizure of the handgun under separate indictments.  We affirmed his convictions on appeal. State v. Sedin, No. A-1950-14 (App. Div. Apr. 14, 2016) (slip. op. at 1-4).

[3]  Velasquez was tried separately from defendant.  Her appeal was listed back-to-back with this appeal and will be addressed in a separate opinion.

[4]  The statutory citation for robbery listed under the final charges section of the judgment of conviction incorrectly states defendant was convicted pursuant to subsection (a)(1) of N.J.S.A. 2C:15-1.  As explained more fully below, however, the language of the indictment and the jury instructions clearly indicate defendant was convicted under subsection (a)(2) of the robbery statute.

A-2228-17T2

degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a), and fourth-degree aggravated assault by pointing the handgun at Vasquez, N.J.S.A. 2C:12-1(b)(4). After denying defendant's motion to vacate the verdict, and ordering the appropriate merger, the trial judge sentenced defendant to an eight-year term of imprisonment, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. This appeal followed.

On appeal, defendant raises the following points for our consideration:

POINT I

THE TRIAL COURT ERRED BY PERMITTING THE STATE TO ADMIT IN EVIDENCE A HANDGUN THAT WAS RECOVERED EIGHT DAYS AFTER THE ROBBERY FROM THE BEDROOM OF THE HOME OF CHRISTOPHER SEDIN.

POINT II

THE TRIAL COURT ERRED BY NOT CHARGING THE JURY, SUA SPONTE, WITH ROBBERY AS DEFINED IN N.J.S.A. 2C:15-1(a)(1).
(Not raised below)

POINT III

THE PROSECUTOR COMMITTED MISCONDUCT DURING SUMMATION BY STATING, "SO [DEFENDANT] WRAPPED [THE HANDGUN USED IN THE ROBBERY] IN A T-SHIRT AND HIDES IT IN HIS BROTHER'S CLOSET BECAUSE HE DOESN'T WANT TO GET CAUGHT" AND THE FIRST RESPONDING POLICE OFFICER TEST

4

IFIED THAT THE VICTIM TOLD HIM THAT THE PERPETRATOR POINTED A "BLACK HANDGUN" TO HIS HEAD, WHEN THERE WAS NO SUCH TESTIMONY.
(Not raised below)

POINT IV

THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.

We reject these contentions and affirm the convictions and sentence. But, we remand to the trial court for entry of an amended judgment of conviction correcting the statutory citation of defendant's second-degree robbery conviction.

I.

We begin by addressing defendant's overlapping contentions that the trial judge erroneously admitted into evidence the black handgun seized from Christopher's closet. Defendant renews his alternative arguments that the weapon lacked probative value, and any probative value it may have had was substantially outweighed by the risk of prejudice under N.J.R.E. 403. Defendant also claims the first prosecutor assigned to represent the State affirmatively indicated he would not seek to admit that evidence at trial. For the first time on appeal, defendant asserts two additional claims: an evidentiary hearing was

5

A-2228-17T2

necessary to resolve the handgun's relevance; and the weapon should have been excluded as other crimes evidence under N.J.R.E. 404(b).

Ten months prior to trial – and more than four years after defendant's arrest[5] – the judge conducted oral argument regarding defendant's motion to preclude the handgun. Defendant's then-retained counsel argued the handgun lacked probative value because the victim could not identify that weapon as the specific handgun used in the robbery. The State countered that the victim saw, from his peripheral vision, what appeared to be a black handgun pressed against his temple.[6] Defendant also argued the State did not charge him with any offenses relating to the weapon or any evidence seized pursuant to the warrant executed at the family's home; rather, Christopher pled guilty to weapons offenses pertaining to that weapon. Defendant maintained he did not live at that residence, contrary to records maintained by the New Jersey Motor Vehicle Commission.

---

[5] The reasons for the protracted pretrial history are not entirely clear from the record, other than the judge's comments at the start of the hearing that this matter was "the number one old case on [her] list. . . . Of course, there have been different prosecutors; different defense attorneys; co-defendants; many, many, many motions . . . ."

[6] At trial, Vasquez testified consistently with the prosecutor's representations, stating one of the men had a "pistol" that "seemed to be black."

A-2228-17T2

Following oral argument, the trial judge issued a cogent written decision, admitting the gun at trial. Quoting our decision in State v. Ricks, 326 N.J. Super 122, 129 (App. Div. 1999) (citation omitted), the judge recognized: "For a weapon to be admissible at trial, the State need not show that the particular weapon offered into evidence is the one that was used in the crime." The judge elaborated:

> In this case, the weapon at issue is a black 9 mm handgun found in [d]efendant's brother's closet, wrapped in a shirt. The victim told the police that he was threatened at gunpoint, and described the weapon as a small, black handgun, which matched the description of the gun found in Christopher Sedin's closet. According to the State, Motor Vehicle Commission records indicate that [d]efendant was living at the residence where the gun was found. Defense [c]ounsel asserts that [d]efendant neither owned the house nor lived there when the weapon was found. However, at a minimum, [d]efendant's brother lived at the residence, and [d]efendant arrived at the home while police were conducting the search. The weapon was located one week after the robbery, and the residence is only two blocks away from the location of the robbery.

> While [d]efense [c]ounsel is correct that Christopher Sedin pled guilty to possession of the weapon, the [c]ourt finds that Christopher Sedin's guilty plea to possession of the handgun would not have precluded [d]efendant from having access to or use of the gun. The probative value of the weapon in this case is high given it was found one block [sic] from the

crime scene only a week after the crime took place, in a residence in which [d]efendant's brother lived.

As to the prejudicial impact of the weapon, given that the State need only show sufficient circumstances to justify an inference by the fact-finder that the particular weapon was likely to have been used in the commission of the robbery, this [c]ourt finds that [d]efense [c]ounsel has not established that the prejudicial effect of admitting this handgun into evidence substantially outweighs the weapon's probative value [pursuant to N.J.R.E. 403(a)].

Given our deferential standard of review of the trial judge's evidentiary decisions, State v. Cole, 229 N.J. 430, 449 (2017), we discern no "clear error of judgment," State v. Koedatich, 112 N.J. 225, 313 (1988), in the decision under review. We affirm the judge's decision substantially for the reasons cited above.[7] We add the following comments.

"The test for relevance is broad and favors admissibility." State v. G.E.P., 458 N.J. Super. 436, 454-55 (App. Div. 2019). Accordingly, evidence "need not be dispositive or even strongly probative in order to clear the relevancy bar." State v. Santamaria, 236 N.J. 390, 405 (2019) (internal quotation marks

---

[7]  Prior to opening statements, defendant's appointed counsel renewed his argument that the weapon was not relevant to the robbery charge. Reiterating her written decision on the record, the judge declined to revisit defendant's application.

omitted).  Further, "[o]nce a logical relevancy can be found to bridge the evidence offered and a consequential issue in the case, the evidence is admissible, unless exclusion is warranted under a specific evidence rule."  State v. Burr, 195 N.J. 119, 127 (2008).  Pertinent to this appeal, relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by the risk of . . . undue prejudice . . . ."  N.J.R.E. 403(a); see also Cole, 229 N.J. at 447.

Defendant's attempt to distinguish Ricks is unpersuasive.  In Ricks, police apprehended the defendant shortly after the victim reported he had been cut on the arm by an unseen weapon during commission of a robbery.  326 N.J. Super. at 126.  During a search incident to the defendant's arrest, police seized a box cutter, which the State presented as evidence of the robbery charge during the defendant's trial.  Id. at 126-27.  We determined the State was not required to prove – as a precursor to admissibility – the box cutter was the actual weapon used by the defendant during the course of the robbery.  Id. at 129.  Instead, we held

> it is clear that the weapon was properly admitted into evidence because the connection to the crime was established:  the victim stated that he was cut with some sort of blade, the victim positively identified defendant both in and out of court, and the box cutter had the capability to cause the injuries sustained by the victim.

[Id. at 130.]

Although the box cutter in <u>Ricks</u> was seized from defendant's person shortly after the incident, in the present matter the State established a connection between the crimes charged and the handgun seized from Christopher's closet. Accordingly, the handgun "had a tendency in reason to prove a fact of consequence." <u>State v. Swint</u>, 328 N.J. Super. 236, 252 (App. Div. 2000). And, any purported failure by the State "to more specifically link the [weapon] with the offenses [went] to the weight of the evidence, not its admissibility." <u>Ibid.</u>

We briefly address defendant's claim that the State initially represented it would not seek to admit the handgun in evidence. During oral argument, the judge declined to consider that argument, stating she was "not aware" of the former prosecutor's representation. Although retained counsel argued he was certain his predecessor would have filed a motion to suppress the weapon absent the State's representation, retained counsel acknowledged the prosecutor's representation was "not on the record." In response, the prosecutor argued the motion at issue was limited to the handgun's relevance under Rule 403, noting, "no certification, transcript, or any other letter or any document from [the former defense counsel or former prosecutor had] been provided indicating any representations that the gun would not be used in this case."

On appeal, however, defendant has provided us with the transcript of a hearing before the same trial judge in October 2013 – some thirty-three months before – supporting the former prosecutor's representation. Because the transcript was not provided to the trial judge, it is inappropriate for consideration on appeal. See Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (recognizing we ordinarily decline to consider issues not raised to the trial court "unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest").

We nonetheless acknowledge the first prosecutor stated: "I have nothing that would lead me to believe that the weapons [sic] found in the house is the weapon that was used during the armed robbery[.]" But, we further observe defendant's then-assigned counsel informed the judge: "Well, then, if it's not coming into the trial, I'll withdraw the motion. If it comes into the trial I'll renew the motion in the middle of the trial. We'll have to stop the trial and have a motion." Prior to opening statements, defendant's appointed counsel – the same counsel who represented defendant at the October 2013 hearing – challenged admissibility of the handgun on relevancy grounds, but did not move to suppress

11

the evidence.[8]  In any event, Christopher's motion to suppress the same handgun was denied by another trial judge.  As noted above, we affirmed Christopher's direct appeal; that appeal challenged the search.  State v. Sedin, No. A-1950-14 (App. Div. Apr. 14, 2016) (slip. op. at 1-4).

In sum, we agree with the trial judge that the probative value of the handgun substantially outweighed its prejudicial value.  Indeed, because the jury acquitted defendant of all weapons-related charges, defendant was not prejudiced by admission of the handgun at trial.  In reaching our decision, we reject defendant's belated request for an evidentiary hearing.  Acknowledging the parties disputed "whether and to what extent the victim saw the handgun when it was pointed at his forehead," the judge correctly determined resolution of that issue was appropriate for the jury's consideration.

Finally, we have considered defendant's newly-minted argument that the handgun was other crimes evidence under N.J.R.E. 404(b), through the prism of the plain error standard, R. 2:10-2, and conclude it lacks sufficient merit to warrant discussion in our written opinion, R. 2:11-3(e)(2).  We simply note because the handgun facilitated the commission of armed robbery as charged in

---

[8]  Reiterating her written decision on the record, the judge declined to revisit defendant's application.

the indictment, the weapon was intrinsic evidence of first-degree robbery and, as such, it was not subject to N.J.R.E. 404(b). State v. Rose, 206 N.J. 141, 180 (2011) (citation omitted) (holding evidence may be intrinsic to the charged crime if it either "'directly proves' the charged offense" or "facilitate[s] the commission of the charged crime"). Of course, "intrinsic evidence" is subject to N.J.R.E. 403, id. at 177, but as stated above, the probative value of the handgun substantially outweighed its prejudice. We therefore discern no error, let alone plain error, in the court's failure to analyze admission of the handgun under N.J.R.E. 404(b).

## II.

For the first time on appeal, defendant claims the trial judge failed to issue the model jury instruction for second-degree robbery, and the lesser-included charge, as given, was erroneous. In particular, defendant contends the judge failed to instruct the jury that second-degree robbery required the State to prove "defendant knowingly inflicted bodily injury or used force upon another." Model Jury Charges (Criminal), "Robbery in the Second Degree (N.J.S.A. 2C:14-1)" (rev. July 2, 2009); see also N.J.S.A. 2C:15-1(a)(1) (providing an individual "is guilty of robbery, if in the course of committing a theft, he . . .

[i]nflicts bodily injury or uses force upon another"). Defendant's contentions are misplaced and require little comment.

The trial judge issued the model instruction for first degree robbery, conforming the charge to the particular language of the indictment that "in the course of committing a theft" defendant "threaten[ed] immediate bodily injury to Antonio Luis-Vasquez and/or did purposely put [him] in fear of immediate bodily injury while armed with a deadly weapon . . . ." See Model Jury Charges (Criminal), "Robbery in the First Degree (N.J.S.A. 2C:15-1)" (rev. Sept. 10, 2012); see also N.J.S.A. 2C:15-1(a)(2) (providing an individual "is guilty of robbery, if in the course of committing a theft, he . . . [t]hreatens another with or purposely puts him in fear of immediate bodily injury").

Accordingly, the judge informed the jury:

> In order for you to find . . . defendant guilty of robbery, the State must prove beyond a reasonable doubt that . . . defendant was in the course of committing a theft and, while in the course of committing that theft, . . . defendant threatened another with or purposely put him in fear of immediate bodily injury.

Closely tracking the remainder of the model charge, the judge explained the difference between first- and second-degree robbery: "A section of our statute provides that robbery . . . is a crime of the second degree, except that it is a crime

14

of the first degree if the actor is armed with or uses or threatens the use of a deadly weapon."

We agree with the State's position on appeal: "because defendant was not charged with robbery by force or injury [under N.J.S.A. 2C:15-1(a)(1)], the judge was not required to instruct the jury on second-degree robbery under that theory, and indeed providing such instruction would have been error absent defendant's consent." We therefore discern no error, let alone plain error, in the robbery instruction as given. See State v. Alexander, 233 N.J. 132, 141-42 (2018) (recognizing an appellate court reviews for plain error "the trial court's obligation to sua sponte deliver a jury instruction when a defendant does not request it and fails to object at trial to its omission"); R. 2:10-2.

## III.

In his third point, which was not raised to the trial court, defendant claims the prosecutor's summation crossed the line because two remarks were not based on the evidence adduced at trial or the reasonable inferences adduced therefrom. According to defendant, the prosecutor improperly commented that: (1) defendant wrapped the handgun used in the robbery in a t-shirt and secreted the weapon in Christopher's closet, and (2) the victim told the first responding

officer that a black handgun was used in the robbery. Once again, we review defendant's claim for plain error. R. 2:10-2; see also Cole, 229 N.J. at 456-58.

The prosecutor's summation spanned sixteen transcript pages; the remarks now challenged were made midway through her closing statement. We set forth those remarks and surrounding comments to give context to the prosecutor's argument to the jury:

> So why would someone want to hide a gun that they had just used to rob someone? Why would the defendant not want to keep the gun close to him? Maybe he can't keep a loaded handgun in his girlfriend's mother's home closet, maybe that wouldn't go over so well. So he wrapped it in a t-shirt and hides it in his brother's closet because he doesn't want to get caught. But, by leading and investigating, [the] [s]ergeant . . . found it.
>
> So Antonio testified during the robbery that a black handgun was pointed at his head. And, if you recall, that's what he told . . . the responding officer at the scene, even though defense counsel didn't mention it just now. He also gave a description of a thin, Hispanic male with short hair.
>
> [(Emphasis added).]

As a general rule, when the defense fails to object to the prosecutor's comments, "the remarks will not be deemed prejudicial." State v. Timmendequas, 161 N.J. 515, 576 (1999). That is because the "[f]ailure to make a timely objection indicates that defense counsel did not believe the remarks

16

were prejudicial at the time they were made." Ibid. Further, the "[f]ailure to object also deprives the court of the opportunity to take curative action." Ibid. To justify a reversal, the prosecutor's comments "must have been clearly and unmistakably improper, and must have substantially prejudiced defendant's fundamental right" to a fair trial. Id. at 575 (internal quotation marks omitted).

Having reviewed the prosecutor's remarks in view of the evidence adduced at trial, we discern no such impropriety here. Instead, the prosecutor's comments were "based upon the evidence" and "constituted a plea to the jury to draw inferences that were reasonable from the evidence introduced during the trial." Swint, 328 N.J. Super. at 261. According to the testimony of the sergeant who recovered the black handgun from Christopher's closet, the weapon was wrapped in a t-shirt. Defendant was arrested outside that residence, listed the residence as his with the Motor Vehicle Commission, and parked the green minivan used in the robbery outside the residence – even though he claimed he lived with Velasquez. Further, the victim testified the "pistol" pressed against his head during the robbery "seemed to be black."

Considering the prosecutor's statements in the context of the trial as a whole, State v. Feaster, 156 N.J. 1, 64 (1998), a reasonable jury could infer from the trial evidence that defendant hid the black handgun in his brother's closet

after robbing the victim. Nonetheless, even if the prosecutor's statements were improper, they were not "clearly capable of producing an unjust result," R. 2:10-2, in light of the jury's verdict finding him not guilty of armed robbery or the weapons offenses.

IV.

As his final point, defendant argues his eight-year sentence with a NERA parole disqualifier is excessive. That argument requires little discussion.

Sentencing determinations are reviewed on appeal with a highly deferential standard. State v. Fuentes, 217 N.J. 57, 70 (2014). "The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) 'the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'" Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). Once the trial court has balanced the aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and -1(b), it "may impose a term within the permissible range for the offense." State v. Bieniek, 200 N.J. 601, 608 (2010). See also State v. Case, 220 N.J. 49, 65 (2014) (instructing that appellate courts may not substitute their

18

judgment for that of the sentencing court, provided that the "aggravating and mitigating factors are identified [and] supported by competent, credible evidence in the record").

In sentencing defendant, the trial judge found significant the following aggravating factors: the risk that defendant will commit another offense (factor three), N.J.S.A. 2C:44-1(a)(3); the extent of defendant's prior criminal record and the severity of those offenses (factor six), N.J.S.A. 2C:44-1(a)(6); and the need for deterrence (factor nine), N.J.S.A. 2C:44-1(a)(9). The judge declined to find the offense was committed in a heinous, depraved or cruel manner (factor one), N.J.S.A. 2C:44-1(a)(1); and found no mitigating factors.

The trial judge appropriately recognized several important considerations bearing on her sentencing analysis. Initially, the judge noted defendant had a juvenile and criminal history, and failed to respond affirmatively to probation and imprisonment. The judge thoroughly considered each of the six mitigating factors and the non-statutory factors raised in defendant's sentencing memorandum, but found none was warranted. "[C]learly convinced that the aggravating factors substantially outweigh[ed] the mitigating factors[,]" the judge sentenced defendant near the middle of the second-degree sentencing

range.  See N.J.S.A. 2C:43-6(a)(2) (providing a term of imprisonment "between five years and [ten] years" for second-degree offenses).

In sum, the sentence imposed was manifestly appropriate and by no means shocks our judicial conscience.  State v. Bolvito, 217 N.J. 221, 228 (2014).

Affirmed and remanded solely to correct the judgment of conviction to reflect defendant's conviction under N.J.S.A. 2C:15-1(a)(2).

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION