**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3502-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JIMMY GERMAN,

     Defendant-Appellant.

_____

> Argued September 16, 2025 – Decided November 13, 2025
>
> Before Judges Susswein, Chase and Augostini.
>
> On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 21-07-0407.
>
> Samuel Carrigan, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Samuel Carrigan, of counsel and on the briefs).
>
> Timothy Kerrigan, Chief Assistant Prosecutor, argued the cause for respondent (Camelia M. Valdes, Passaic County Prosecutor, attorney; Timothy Kerrigan, of counsel and on the brief).
>
> Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Jimmy German appeals his jury trial convictions for four armed robberies committed against separate victims on separate occasions over the course of two days in January 2021. Defendant contends the court erred by ruling inadmissible documents that defendant proffered at trial regarding his intellectual and emotional challenges, including two Individualized Education Plans (IEPs) and a neurological evaluation. These documents show the schools he once attended classified him as having a learning disability and emotional disturbance. Defendant also contends, for the first time on appeal, that the trial court erred by not sua sponte reopening the pretrial Miranda[1] hearing to account for those records, which had not been presented at the pretrial suppression hearing. Aside from appealing his convictions, defendant also challenges the aggregate twenty-seven-year prison term the trial court imposed. After reviewing the record in light of the governing legal principles, we affirm the convictions and sentence.

I.

We discern the following facts and procedural history from the record. The first of the four robberies was committed on January 29, 2021, at around

_____

[1] 384 U.S. 436 (1966).

5:00 a.m. The victim, victim one, was getting into his van when a black man wearing a hoodie pointed a pistol at him and demanded money. The armed assailant was accompanied by others. The group took victim one's two phones and the cash in his wallet. The armed assailant struck victim one in the head with the handgun while another person closed the van door on his foot. After the group fled, victim one went to a nearby business and asked the employees to call the police. This robbery was captured on surveillance video, which was played at trial.

The second robbery occurred about an hour after the first robbery. The victim, victim two, was walking to his car when three individuals wearing black outfits and black ski masks approached. Two of them were brandishing guns. They demanded that victim two hand over his belongings. He complied by giving them his phone and wallet. This robbery was not captured on surveillance video.

The third robbery occurred about an hour later around 7:00 a.m. The victim, victim three, was in his van when three men wearing ski masks approached. The assailants opened the van doors and "took everything that [he] had on [him]" including a new lunchbox, his phone, $170 cash, his bank cards, and his takeout meal from a nearby restaurant. Victim three did not see any

3

weapons but testified that he was struck in his side with something harder than a fist. The assailants left the scene in a car. This robbery was captured on surveillance video, but the recording does not show the getaway car.

The fourth robbery was committed on January 31 at around 11:00 a.m. The victim, victim four, was walking to his car when a 2015 or 2016 Nissan Altima pulled up next to him. Two persons got out of the car with handguns and took victim four's cell phone, cash, and wallet. Victim four asked for the wallet back because it contained his license and social security card. Someone in the group threw it on the ground before they drove away. Victim four returned to his home and called his wife and the police. A neighbor witnessed the robbery and took videos and pictures that show the vehicle's license plate.

Shortly after police received victim four's report and the neighbor's videos and photos, an officer spotted the assailants' vehicle at a nearby gas station. Several officers responded and ordered the occupants to exit the vehicle. Co-defendant Alexander Sami was in the driver's seat, defendant was the front-seat passenger, and then-juvenile S.J.[2] was in the back seat. Sami was armed with an airsoft gun. The car's glovebox contained a handgun. Victim four's cell phone was found on the front passenger seat.

_____

[2] We use initials to identify the parties in accordance with R. 1:38-3(d).

A-3502-22

Paterson Police Department Detective Marcos Martinez and Detective Sergeant Kelvin Matos questioned defendant at the police station. Sergeant Matos is the brother of the first victim. The interrogation was electronically recorded and a redacted version was played for the jury. The recording shows that Detective Martinez read defendant his Miranda rights and asked if defendant understood them. Defendant stated "yes" and signed the Miranda form.

After waiving his Miranda rights, defendant admitted that on January 31, before he was arrested, he saw a man walking down the street and decided to rob him. He acknowledged that he was sitting in the passenger seat of the car, that there was a gun in the car, and that he knew the car was stolen because he had stolen it. When asked about the first January 29 robbery, defendant stated "you got the wrong person." With respect to the second and third January 29 robberies, defendant explained that he remembered taking a man's food and eating it and selling the three phones he took.

On July 29, 2021, defendant and codefendant Sami were charged by indictment with the following crimes: first degree carjacking, N.J.S.A. 2C:15-2(a)(1) and N.J.S.A. 2C:2-6 (count one); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) and N.J.S.A. 2C:2-6 (counts two, seven); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (counts

three, nine, fourteen, nineteen, twenty-four); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (counts four, eleven, sixteen, twenty-one, twenty-six); first-degree using a juvenile to commit a crime, N.J.S.A. 2C:24-9 (counts five, eight, thirteen, eighteen, twenty-three); first-degree robbery, N.J.S.A. 2C:15-1(a)(1) and N.J.S.A. 2C:2-6 (counts six, twelve, seventeen, twenty-two); fourth-degree possession of imitation firearm for an unlawful purpose, N.J.S.A. 2C:39-4(e) (counts ten, fifteen, twenty, twenty-five); third-degree receiving stolen property, N.J.S.A. 2C:20-7(a) (count twenty-seven); and fourth-degree unlawful taking of a means of conveyance, N.J.S.A. 2C:20-10(d) (count twenty-eight).

On January 13, 2023, the trial court heard several pretrial motions, including defendant's motion to suppress statements he made to police. At the Miranda hearing, the State presented testimony from Martinez and introduced the detective's report, defendant's signed Miranda waiver, and the electronic recording of the stationhouse interrogation. Defense counsel did not call any witnesses or present any evidence.

The trial court issued an oral opinion, concluding that defendant knowingly, intelligently, and voluntarily waived his Miranda rights. The court noted that "defendant claims that he did not knowingly, intelligently waive his

rights, as the police did not specifically advise him of the exact charges prior to questioning him," but found that "there is no question that defendant knew why he was being questioned." After finding the State's witness, Officer Martinez, credible, the court addressed the relevant factors, ruling:

> [T]he [c]ourt finds that the defendant was unquestionably advised prior to waiving his <u>Miranda</u> rights that he was being charged, regardless of what he did. The [c]ourt further finds that the defendant was [nineteen] years old at the time of this interrogation, that he was interrogated approximately three and a half hours after his arrest. He was offered refreshments. He was also offered to use the bathroom before the interrogation began. The interrogation, itself, was approximately [forty] minutes long. The police read aloud the <u>Miranda</u> form to the defendant. They made sure that he understood everything. The video, B-3, shows that the defendant was able to review the waiver portion himself prior to acknowledging. The fact that the defendant started to speak, and the detectives told him, wait, you have to sign this first. They repeatedly told him, he did not have to talk to them; he was going to be arrested and charged, regardless of whether he gave a statement.
>
> They repeatedly told him that he did not have to sign it. So, the [c]ourt finds there is absolutely no evidence to indicate that his will was overborn in any way, shape or form. There is no evidence, whatsoever, to show that he was forced, coerced, threatened in any way. Based upon the totality of the circumstances, the [c]ourt does not find that he was subject to physical punishment or mental or physical exhaustion. So, the [c]ourt does find that the State has met their burden and shown by—beyond a reasonable doubt that Mr. German

7

knowingly, intelligently and voluntarily waived his rights.

A jury trial was convened in early February 2023 over the course of seven non-consecutive days. At the close of the State's case, the court dismissed counts five, eight, thirteen, eighteen, and twenty-three (using a juvenile to commit a crime).

The jury found defendant guilty of all four counts of first-degree robbery (counts six, twelve, seventeen, and twenty-two); one count of the lesser-included disorderly persons offense of simple assault (amended count seven); one count of second-degree unlawful possession of a weapon (count twenty-six); and one count of unlawful taking of a means of conveyance (count twenty-eight).

On March 31, 2023, the trial court sentenced defendant to an aggregate prison term of twenty-seven years, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Specifically, on counts six, twelve and seventeen (the robberies that occurred on January 29), the court imposed three prison terms of five years each. The court merged amended count seven (simple assault) with count six. On count twenty-two (the robbery that occurred on January 31), the court imposed a prison term of seventeen years. On count twenty-six (unlawful possession of a weapon), the court imposed a prison term of seven years. On count twenty-eight (unlawful taking of a means of conveyance), the court

8

imposed a one-year prison term.  The court ordered counts six, seventeen, and twenty-two to run consecutively.

This appeal followed.  Defendant raises the following contentions for our consideration:

> POINT I
>
> IT WAS ERROR FOR THE COURT TO DENY SUPPRESSION WITHOUT CONSIDERING THE EXTENSIVE DOCUMENTATION OF [DEFENDANT'S] INTELLECTUAL DISABILITIES, REQUIRING REMAND FOR A NEW SUPPRESSION HEARING.
>
> POINT II
>
> THE TRIAL COURT ERRED WHEN IT EXCLUDED INFORMATION ABOUT DEFENDANT'S INTELLECTUAL DISABILITIES FROM EVIDENCE AT TRIAL.
>
> POINT III
>
> DEFENDANT'S [TWENTY-SEVEN-YEAR] NERA SENTENCE, COMPRISING THREE CONSECUTIVE SENTENCES, FOR HIS FIRST CONVICTIONS IS EXCESSIVE.

Defendant raises the following additional contention in his counseled reply-brief:

> POINT I
>
> WITHOUT CONSIDERING THE EVIDENCE OF [DEFENDANT'S] INTELLECTUAL DISABILITIES,

THE TRIAL COURT'S SUPPRESSION DECISION DOES NOT ASSESS THE TOTALITY OF THE CIRCUMSTANCES SURROUNDING THE INTERROGATION.

Defendant raises the following additional contentions in a two-page self-represented brief:[3]

POINT I

THE STATE FAIL[ED] TO PROVE ALL ELEMENTS OF ARMED ROBBERY FIRST DEGREE N.J.S.A. 2C[:]15-1(A)(1) [] [AS] NO VICTIM SUFFER[ED] SERIOUS INJURIES OR THERE IS NO RECORD OF SERIOUS BODILY INJURIES.

POINT II

THE STATE FAIL[ED] TO PROVE ALL ELEMENTS OF UNLAWFUL POSSESSION OF A WEAPON SECOND DEGREE N.J.S.A. 2C[:]39-5(B) MY FINGERPRINTS WERE NOT ON THE GUN AND THERE'S NO PROOF OF ACTUAL POSSESSION ON VIDEO.

POINT III

THE LEAD DETECTIVE IN THE MIRANDA INTERROGATION WAS [INVESTIGATING] HIS BROTHER'S ROBBERY POSING A CONFLICT OF INTEREST.

POINT IV

THE STATE FAIL[ED] TO PRESENT EVIDENCE

---

[3] The brief consists of five bullet sentences.

10

CAMERA FOOTAGE OF ROBBERY [VICTIM TWO] UNDER THE INDICTMENT COUNT 12 WHICH FAILS TO PROVE ALL ELEMENTS OF ARMED ROBBERY IN THE FIRST DEGREE ACCORDING TO N.J.S.A. 2C:15-1(A)(1) [].

POINT V

THE STATE FAIL[ED] TO PROVE ALL ELEMENTS OF SIMPLE ASSAULT-NEGLIGENTLY CAUSING BODILY INJURY WITH A DEADLY WEAPON THIRD DEGREE N.J.S.A. 2C:12-1(A) [] THERE'S NO PROOF OF ME ACTUALLY CAUSING BODILY [INJURY] TOWARDS [VICTIM ONE] AND [VICTIM ONE] DID NOT POINT ME OUT IN A[N] IDENTIFICATION PROCEDURE NOR PHYSICALLY IN TRIAL AS THE SOLE PERPETRATOR.

II.

We first address defendant's contention that the trial court erred by excluding evidence concerning his intellectual disabilities. Specifically, defendant at trial sought to admit a 2016 IEP, a 2018 IEP, a 2017 Pediatric Neurological Evaluation,[4] and a November 2014 letter from the Social Security

---

[4] The 2017 Evaluation was conducted on September 20, 2017, when defendant was sixteen years old. That Evaluation acknowledges that defendant's schools in Paterson and Garfield classified him "under the category of specific learning disability and emotionally disturbed." The evaluator recommended that defendant receive "ongoing intervention under [the] supervision of a pediatric psychiatrist" and that he remain in special education.

11

Administration.[5]  The prosecutor objected to these documents on relevance grounds.  The trial court determined that neither the documents nor defendant's testimony about them were relevant to the crimes charged and would not aid the jury in making any factual determinations.  The court further concluded that the documents and any related testimony would confuse the jury.

We begin our analysis by acknowledging the legal principles governing this appeal.  As a general matter, we must "defer to a trial court's evidentiary ruling absent an abuse of discretion."  State v. Garcia, 245 N.J. 412, 430 (2021).  "Under that deferential standard, we review a trial court's evidentiary ruling only for a 'clear error in judgment.'"  State v. Medina, 242 N.J. 397, 412 (2020) (quoting State v. Scott, 229 N.J. 469, 479 (2017)).

That said, it can hardly be disputed that "[a] defendant enjoys a fundamental constitutional right to a fair trial, which necessarily includes the right to present witnesses and evidence in [their] own defense."  State v. Jenewicz, 193 N.J. 440, 451-52 (2008).  Importantly, however, "a defendant's right to present a defense is not absolute."  Ibid.  "The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise

---

[5]  The letter, which was issued when defendant was thirteen years old, details that he was receiving Supplemental Security Income payments.

inadmissible under standard rules of evidence." Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (alteration in original) (quoting Taylor v. Illinois, 484 U.S. 400, 410 (1988)).

The gravamen of defendant's argument is that the trial court denied him the right to present his defense by preventing him from introducing evidence about his intellectual disabilities. It bears emphasis, however, that defense counsel explicitly acknowledged to the trial court that he was not pursuing a diminished capacity defense. Counsel argued the documents were nonetheless relevant, explaining:

> [T]he purpose is to give [the jury] an overall picture of the level of sophistication of [defendant]. . . . [P]art of the difficulty for me was the family gave this stuff to me relatively late[]. . . . [T]here's also no support for the idea that I'm making it up, because we do have the reports, there's an IEP from the school . . . a pediatric evaluation from Saint Joe's[, and] . . . a[] [Supplemental Security Income (SSI)] approval. . . . Now I'm not gonna get into the medical stuff because obviously my client is not qualified, but I think it's part of his history so it is appropriate for me to bring out, you know, some of this history.
>
> . . . .
>
> I'm not asserting a diminished capacity [defense].

Defense counsel further argued:

13

The relevance would be to allow the jury to evaluate his level of sophistication . . . because here we don't have one charge where it's a matter of in or out. We have a number of charges for a number of different victims and a number of different possible outcomes, at least with regard to the robbery on [January] 31st. And if I am reading what I anticipate to be my client's testimony about what happened on that day, I think the jury is going to benefit from understanding . . . his level of sophistication, because they're gonna have to make some decisions about the finer shades of gray about what happened that day.

The court responded:

[T]hat's just it . . . I don't want them to use it for an unintended purpose. And you're saying right here blatantly on the record it's not to go to any sort of diminished mens rea, it's just to give them a background as to maybe, you know, his sophistication let's say for hypothetically when he's waiving his rights. One of the things they can consider is the totality of the circumstances and whether his statement was voluntarily made, not a legal decision that I make is separate and apart from that, but they're allowed to consider those factors. And you know, I just don't know how far you're going. Like I kind of want a preview of what you intend to elicit because I don't think it's fair to the State to allow the defendant to say yeah, well, you know, I was in special ed classes, I don't know anything about anything, I don't know how to read, I don't know how to do anything, because now you'[v]e painted this picture before the ladies and gentlemen that he is, you know . . . but I don't necessarily think at this late juncture it's fair to the State to allow this defendant to testify about his entire history of not being able to function.

A-3502-22

The court ultimately determined that the IEPs would be excluded, reasoning in pertinent part:

> I think saying an IEP, especially when you have people that may have children that experienced that, their definition of IEP is different. And without giving them the IEP to say here's what his challenges are, I don't think it's relevant, I think it will confuse the jury. I don't think it goes to any of the elements. I don't think it's gonna aid the jury in making any sort of factual decisions that they would need to make in order to determine this case. And so I would sustain the objection.

The court also ruled the SSI letter was inadmissible, concluding:

> I don't think the fact that he received SSI is relevant to the facts and circumstances of this case. We don't know why he received SSI. . . . I don't think that's fair and I think that's confusing to the jurors, and I think it's really a play on sympathy at this point.

We agree with the trial court that the documents and related lay testimony by defendant were not relevant to the substantive charges. Defendant's intellectual challenges might well have been relevant in the context of a diminished capacity defense, see N.J.S.A. 2C:4-2. But here, no such defense was raised, as counsel made abundantly clear to the court. Those documents and that line of questioning were thus properly excluded. Cf. Medina, 242 N.J. at 412 ("Under [the] deferential standard, we review a trial court's evidentiary ruling only for a 'clear error in judgment.'").

15

III.

We turn next to defendant's contention, raised for the first time on appeal, that the trial court at the suppression hearing failed to weigh important factors that would have shown that his waiver of Miranda rights was not knowing, intelligent, or voluntary. Defendant asserts that he has a "lifelong difficulty with processing and understanding new information." However, defendant did not present this argument, or the IEPs, to the trial court at the suppression hearing. We thus address whether the trial court was obliged to reopen sue sponte the Miranda hearing when, during the course of the trial, it learned about the IEPs.

Our review of a decision on a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021). "Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237 N.J. 384, 395 (2019) (quotation marks omitted) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). We defer to those factual findings because of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 243 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Accordingly, we "ordinarily will not disturb the trial

16

court's factual findings unless they are 'so clearly mistaken "that the interests of justice demand intervention and correction."'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)).

Furthermore, and importantly for purposes of this matter, "on appeal we may only consider whether the motion to suppress was properly decided based on the evidence presented at that time." State v. Robinson, 200 N.J. 1, 15 (2009) (quoting State v. Gibson, 318 N.J. Super. 1, 9 (App. Div. 1999) (emphasis added).

Turning to substantive legal principles, when an arrestee waives their Miranda rights, an inculpatory statement to police is only admissible if prosecutors "prove beyond a reasonable doubt that the suspect's waiver was knowing, intelligent, and voluntary in light of all the circumstances." State v. Presha, 163 N.J. 304, 313 (2000) (citing State v. Burris, 145 N.J. 509, 534 (1996)). "In considering whether the demanding proof-beyond-a-reasonable-doubt standard has been met, courts assess the totality of the circumstances surrounding the interrogation, including 'the defendant's age, education and intelligence, advice as to constitutional rights, length of [the] detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved.'" State in Interest of M.P., 476

N.J. Super. 242, 262 (App. Div. 2023) (alteration in original) (quoting State v.

Erazo, 254 N.J. 277, 301 (2014)); see also State v. L.H., 239 N.J. 22, 42 (2019)

(noting that "the due process test takes into consideration the totality of all the

surrounding circumstances—both the characteristics of the accused and the

details of the interrogation") (citations omitted) (internal quotation marks

omitted).  In Presha, the New Jersey Supreme Court emphasized that

> [a]t the root of the inquiry is whether a suspect's will
> has been overborne by police conduct.  In determining
> whether a suspect's confession is the product of free
> will, courts traditionally assess the totality of
> circumstances surrounding the arrest and interrogation,
> including such factors as "the suspect's age, education
> and intelligence, advice as to constitutional rights,
> length of detention, whether the questioning was
> repeated and prolonged in nature and whether physical
> punishment or mental exhaustion was involved."
>
> [163 N.J. at 313 (quoting State v. Miller, 76 N.J. 392,
> 402 (1978)).]

Applying these foundational principles to the present case, we have no

quarrel with defendant's contention that evidence of a learning or reading

disability can be relevant in determining whether the State has proved beyond a

reasonable doubt that an arrestee knowingly and voluntarily waived their

Miranda rights.  See M.P., 476 N.J. Super. at 301.  Defendant's reliance on M.P.,

18

however, is misplaced, or at least overstated, because the circumstances in that case are starkly different from the circumstances in the matter before us.

In M.P., the juvenile filed a motion to suppress statements he made during interrogation and called an expert in adolescent brain development to testify at the hearing. Id. at 259, 277-78. The trial court denied M.P.'s motion. We reversed and remanded because the trial court failed to consider the expert's unrebutted testimony that addressed the juvenile's personal intellectual, education, and cognitive limitations in the context of whether his waiver was knowing and voluntary. Id. at 289. We held:

> [W]hen determining whether the State has proven the waiver of rights was knowing, intelligent, and voluntary beyond a reasonable doubt, M.P.'s undisputed cognitive limitations and mental conditions must be accounted for in addition to the circumstances outwardly displayed in the video. A recording of the interrogation showing a suspect's willingness to talk to police—while highly relevant—may not tell the whole tale because the video may not reveal an interrogee's underlying deficits that inhibit an adequate understanding of constitutional rights. The ultimate fact-sensitive issue, we stress, is whether M.P. actually knew, understood, and voluntarily waived his rights, not just whether he appeared to be willing, if not eager, to speak to police.
>
> [Ibid.]

In sharp contrast, in the matter before us, there was no mention at the Miranda hearing of defendant's intellectual capacity, learning disability, or emotional disturbance. Rather, the hearing focused on the conduct of the police interrogators. Further, defendant expressly declined to present evidence.

We stress that while the "totality of the circumstances" can include factors relating to an arrestee's intelligence and education, as we emphasized in M.P., 476 N.J. Super. at 290, the fact remains that a motion court is constrained by the evidence presented to it and the arguments of the advocates at the suppression hearing. As noted by Judge Edwin H. Stern in a case involving a motion to suppress under the Fourth Amendment, State v. Gibson, "[w]e take this opportunity to remind the parties that on appeal 'we may only consider whether the motion to suppress was properly decided based on the evidence presented at that time.'" 318 N.J. Super. at 9 (citations omitted).

We add that defendant cites no authority that holds that a trial court in these circumstances is obligated to sua sponte reconsider its earlier ruling. Moreover, there was no motion for reconsideration or to re-open the Miranda hearing.

Relatedly, the defense has not proffered expert opinion on the significance of the IEPs. We confirmed at oral argument that, to this day, defense counsel

20

has not retained an expert to evaluate and opine on defendant's capacity to understand and waive <u>Miranda</u> rights. The IEP records, standing alone, are by no means dispositive on that question. Those plans were prepared when defendant was still in school, three and five years, respectively, before the stationhouse interrogation. Furthermore, the IEPs were developed to facilitate defendant's education, not to ascertain his ability to understand <u>Miranda</u> rights administered orally and in writing by police officers during a custodial interrogation.

Notably, moreover, counsel acknowledged at oral argument that the defense has not retained an expert to conduct a Miranda Rights Comprehension Index evaluation. <u>See</u> <u>M.P.</u> at 284. We decline to treat IEPs as the functional equivalent of or adequate substitute for an evaluation tool specifically designed to address whether a person understands their <u>Miranda</u> rights. In these circumstances, defendant has not shown that even if the IEPs had been considered at the <u>Miranda</u> hearing as part of the totality of the circumstances, the outcome would be different. <u>See</u> <u>R.</u> 2:10-2 (permitting an appellate court to review an issue not raised below only if the trial court's error was "clearly capable of producing an unjust result.").

A-3502-22

In sum, the current record does not support defendant's newly minted contention that the trial court erred by not sua sponte reopening the Miranda hearing. We note in the interest of completeness that the State argues that the contention defendant raises for the first time on appeal should instead be addressed in a petition for post-conviction relief. We offer no opinion on that assertion. We hold only that defendant has not established grounds in this appeal for our intervention with respect to the denial of his motion to suppress his confession.

IV.

Finally, we address defendant's sentencing contentions. We begin by acknowledging that "[a]ppellate courts review sentencing determinations in accordance with a deferential standard." State v. Fuentes, 217 N.J. 57, 70 (2014). The reviewing court must not substitute its judgment for that of the sentencing court. State v. O'Donnell, 117 N.J. 210, 215 (1989). Accordingly, a sentence must be affirmed unless:

> (1) [T]he sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."

> [Fuentes, 217 N.J. at 70 (quoting State v. Roth, 95 N.J.
> 334, 364-65 (1984)).]

Stated another way, we may modify a defendant's sentence only when convinced that the sentencing judge was clearly mistaken. State v. Johnson, 118 N.J. 10, 15 (1990); State v. Jabbour, 118 N.J. 1, 6 (1990).

Defendant argues his twenty-seven-year NERA sentence is excessive. He contends, for example, the trial court was required to give greater weight to the relevant mitigating factors. Further, defendant asserts that the sentences should run concurrently because three of the robberies took place within a ninety-minute span. Defendant also claims that he is "far from a sophisticated criminal" and "should not be receiving a sentence three times as long as those given to his co-defendants after they pled out." We are not persuaded by any of these contentions.

## A. Aggravating and Mitigating Factors

The aggravating and mitigating factors a trial court may consider in imposing a sentence are set forth in N.J.S.A. 2C:44-1(a) and (b). It is well-established that the consideration of aggravating and mitigating factors must be part of the deliberative process. State v. Dalziel, 182 N.J. 494, 505 (2005); State v. Cassady, 198 N.J. 165, 180 (2009). Trial courts must "explain and make a thorough record of their findings to ensure fairness and facilitate review." State

23

v. Comer, 249 N.J. 359, 404 (2022). "Proper sentencing thus requires an explicit and full statement of aggravating and mitigating factors and how they are weighed and balanced." State v. McFarlane, 224 N.J. 458, 466 (2016) (quoting State v. Randolph, 210 N.J. 330, 348 (2012)); See also State v. Case, 220 N.J. 49, 66 (2014) ("[C]ritical to the sentencing process and appellate review is the need for the sentencing court to explain clearly why an aggravating or mitigating factor presented by the parties was found or rejected and how the factors were balanced to arrive at the sentence.").

In this case, the trial court found that three aggravating factors applied. With respect to aggravating factor three ("[t]he risk that the defendant will commit another offense;" N.J.S.A. 2C:44-1(a)(3)), the court stated:

> Here the [c]ourt finds that there's rational[] credible evidence to support the imposition of this factor as the [c]ourt considers the defendant has been rearrested for a new offense even while incarcerated.
>
> The [c]ourt, as indicated earlier, reviewed the warrant complaint which alleges that the defendant was observed by corrections officers reaching out of the food for himself, throwing cups of suspected urine at corrections officers.
>
> In addition, the [c]ourt finds credible evidence to support the imposition of this factor based upon the defendant's admitted substance abuse issues. In the presentence report the defendant admitted . . . to the

frequent use of marijuana and has a history of using other controlled, dangerous substances.

The [c]ourt also notes that during a statement to the police in connection with this case he admitted that he and his co-defendants would smoke marijuana and then go out and rob people because it was funny how scared they would get.

In addition . . . defendant stated that . . . had the police not caught him on January 31st, 2021 they would have kept doing it.

He also stated that he committed the robberies because he was bored and didn't feel like his family was helping him financially.

The defendant admitted that he knew he could try to get a job but chose to rob people instead.

Furthermore, the [c]ourt considers the defendant was not in school and has very little to no work history.

Lastly, the [c]ourt considers the defendant's strong will and stubbornness to accede to anyone who's trying to help him, be that the doctors, the teachers or his grandmother.

The [c]ourt places moderate to—strong[] [weight] on this factor.

With respect to aggravating factor nine ("[t]he need for deterring the defendant and others from violating the law," N.J.S.A. 2C:44-1(a)(9)), the court found:

The State requests, and the defendant concedes, that aggravating factor number nine is applicable.

The [c]ourt finds that there's ample rational, credible evidence to support the imposition of this factor. The [c]ourt finds that the need for specific concerns in this case is abundantly clear and strong.

The [c]ourt apportions this factor substantial weight.

As indicated at the outset, the defendant was convicted by a jury of his peers of one count of robbery first degree involving victim I.O., and three counts of robbery second degree involving victim A.M., J.C. and J.P., one count of unlawful possession of a weapon, second degree and one count of unlawful taking by means of conveyance fourth degree, one count of simple assault, disorderly person's offense.

The [c]ourt finds that, "the need for public safety and deterrence increase proportionally in the degree of the crimes." State [v.] Carey, 168 [N.J.] 413, 421 [(2001)].

Here there is one first degree crime and two multiple second degree crimes. The [c]ourt finds that the defendant needs to understand there are consequences for his specific actions. He cannot just take items from others when he's bored and thinks it's funny.

All of the victims stated how they feared for their life. One was pistol whipped prior to taking items.

Another had not only his wallet and money taken, but also his food which the [c]ourt notes the defendant thought was funny.

26

These were hard-working, innocent people who did not deserve this.

The [c]ourt also notes that at one point during his voluntary statement to the police the defendant is laughing when describing one of the robberies as "my man's scared as hell. He thought we was about to shoot him."

The need for general deterrence is also clear and strong. This type of needless street violence cannot continue and the general public needs to understand that should they engage in similar behavior they will be punished accordingly.

With respect to aggravating factor thirteen ("[t]he defendant, while in the course of committing or attempting to commit the crime, including the immediate flight therefrom, used or was in possession of a stolen motor vehicle," N.J.S.A. 2C:44-1(a)(13)), the court found:

The defendant concedes, and the State submits, that this factor also applies. The jury found the defendant guilty beyond a reasonable doubt of Count 28 charging him with unlawful taking [of a] means of conveyance.

The defendant also admitted during his testimony to the ladies and gentlemen of the jury that he knew that the car was stolen.

Also, during his statement to the police he admitted that he took license plates that he found in his home and switched the license plates on the car.

27

A-3502-22

The [c]ourt is also mindful that while the State did not move the car jacking charge the defendant admitted in his voluntary statement to the police that the Nissan he was arrested in he stole from the victim without consent or permission.

As such, the [c]ourt finds that there is no question there is ample credible, rational evidence to support the imposition of this factor and apportions it some to moderate weight.

As to mitigating factors, the court concluded that mitigating factors two ("[t]he defendant did not contemplate that the defendant's conduct would cause or threaten serious harm"), three ("[t]he defendant acted under a strong provocation"), eight ("[t]he defendant's conduct was the result of circumstances unlikely to recur"), twelve ("[t]he willingness of the defendant to cooperate with law enforcement authorities"), and thirteen ("[t]he conduct of a youthful defendant was substantially influenced by another person more mature than the defendant") did not apply.[6] N.J.S.A. 2C:44-1(b) (2), (3), (8), (12), and (13). The court concluded that mitigating factors six, seven, and fourteen applied.

The court gave mitigating factor six ("[t]he defendant has compensated or will compensate the victim of the defendant's conduct for the damage or injury

---

[6] Defendant conceded that mitigating factor one ("[t]he defendant's conduct neither caused nor threatened serious harm," N.J.S.A. 2C:44-1(b)(1)) did not apply.

that the victim sustained, or will participate in a program of community service;" N.J.S.A. 2C:44-1(b)(6)) "minimal weight," as defendant and his co-defendants agreed to pay restitution jointly and severally to the victims and there has been no evidence that defendant is unable to obtain gainful employment. For mitigating factor seven ("[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense," N.J.S.A. 2C:44-1(b)(7)), the court found:

> [T]he defendant does not have a prior criminal history. This is his first felony conviction.
>
> He also successfully completed a deferred disposition program that spanned over a year concluding in 2018.
>
> The [c]ourt is aware that he has pending charges from an incident that occurred while he was incarcerated. As such . . . prior to the commission of the instant offense the defendant did lead a law-abiding life for a substantial period of time.
>
> Being mindful of the fact that he has allegedly committed a new offense and was arrested while incarcerated the [c]ourt will only apportion this factor some to little weight.

With respect to mitigating factor fourteen ("[t]he defendant was under [twenty-six] years of age at the time of the commission of the offense," N.J.S.A.

29

2C:44-1(b)(14)), the court stated defendant was nineteen years and eleven months old at the time the crimes were committed, and gave this factor "the most weight of the mitigating factors."

The court then determined that "in weighing the qualitative weight of the aggravating factors against the qualitative weight of the mitigating factors the [c]ourt finds that the qualitative weight of aggravating factors three, nine and [thirteen] significantly outweigh the qualitative weight of mitigating factors seven and [fourteen]."

We are satisfied the trial court aptly articulated its reasons for finding the relevant aggravating factors, and for not finding some of the mitigating factors argued by the defense. Those findings are supported by credible evidence. So too, we believe the court's weighing of the aggravating factors as against the mitigating factors was thoughtful and proper and in no way constitutes an abuse of the court's wide discretion.

## B. Consecutive Sentences

Finally, we address defendant's contention that the trial court erred in ordering the sentences on some of the counts to run consecutively. Our Supreme Court in State v. Yarbough provided guidance for determining whether to impose consecutive sentences, holding:

A-3502-22

(1) there can be no free crimes in a system for which the punishment shall fit the crime;

(2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;

(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

> (a) the crimes and their objectives were predominantly independent of each other;

> (b) the crimes involved separate acts of violence or threats of violence;

> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

> (d) any of the crimes involved multiple victims;

> (e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; and

(6) there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms

31

(including an extended term, if eligible) that could be imposed for the two most serious offenses.

[100 N.J. 627, 643-44 (1985), holding modified by State v. Torres, 246 N.J. 246 (2021).]

The Yarbough guidelines leave "a fair degree of discretion in the sentencing courts." Carey, 168 N.J. at 427. "[A] sentencing court may impose consecutive sentences even though a majority of the Yarbough [factors] support concurrent sentences," id. at 427-28, but "the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision," State v. Miller, 205 N.J. 109, 129 (2011) (quoting Yarbough, 100 N.J. at 643).

The Court more recently elaborated on those guidelines in Torres. 246 N.J. at 246. In Torres, the court asserted "Yarbough's second factor requires a sentencing court to place on the record its statement of reasons for the decision to impose consecutive sentences, which . . . we have directed, should focus 'on the fairness of the overall sentence, and the sentencing court should set forth in detail its reasons for concluding that a particular sentence is warranted.'" Id. at 267-68 (quoting State v. Miller, 108 N.J. 112, 122 (1987)).

In the matter before us, the trial court issued a thorough oral opinion, explaining:

[P]er [Yarbough] . . . a consecutive sentence is appropriate.

First, the [c]ourt finds there exists ample, credible evidence that the defendant, either himself, or as an accomplice to co-defendant Sami and Johnson, engaged in a spree of robberies that involved four separate victims based upon the jury's verdict.

[Yarbough] makes clear that there can be no free crimes in the system for which the punishment shall fit the crime. The [c]ourt is aware that three of the four robberies of the victims occurred on the same day, that is January 29th, 2021.

However, the [c]ourt places weight on the fact that while the robbery of victim A.M. and J.P. both occurred on January 29th, 2021[,] these two separate robberies occurred at different times and different places.

Thus, the [c]ourt finds that the crimes and their [objectives] as to each separate victim were predominantly independent of each other. The [c]ourt also finds that the crimes involved separate acts of violence or threats of violence.

[]Moreover, case law permits the imposition of consecutive sentences where crimes occurred at the same time and same place.[] That's State [v.] Swint, [328 N.J. Super. 236, 264 (App. Div. 2000)].

Permitting consecutive sentences where the crimes were connected by unity of purpose, were somewhat independent upon one another, and were committed in a short time frame.

[]The [c]ourt further finds the defendant should not receive the benefit of a "free crime" with the imposition of a concurrent sentence on this count.[] That's State [v.] Mejia, [141 N.J. 475, 50[4] (1995)]; [see also] State [v.] Molina, 168 [N.J. 436, 441-43 (2001))].

Continuing with the [Yarbough] analysis, the [c]ourt notes the defendant was convicted of seven separate offenses, one of which merges for purposes of sentencing. Again, the [c]ourt must stress that the crimes involved four separate criminal episodes. In imposing consecutive sentences the [c]ourt is not double counting aggravating factors.

For all of the foregoing reasons the [c]ourt finds that in qualitatively reviewing the [Yarbough] factors against the principle of overall proportionality and fundamental fairness in the aggregate sentence the [c]ourt is satisfied that imposing the sentence on Count 17 consecutive to . . . Count 6 is appropriate. That's State [v.] Torres, 246 [N.J. at 246].

The court continued its analysis by considering the Yarbough guidelines

as applied to count twenty-two (the January 31 first-degree robbery), stating:

[P]er [Yarbough] . . . consecutive sentences are appropriate.

First, the [c]ourt finds that there is ample, credible evidence that the defendant, either himself or as an accomplice to his co-defendant, engaged in not only this first degree robbery, but also three second degree robberies based upon the jury's verdict.

[Yarbough] makes clear there can be no free crimes in a system for which punishment shall fit the

34

crime. As to this particular robbery the credible evidence shows that it occurred on January 31st, 2021.

Therefore, the [c]ourt finds there is no question that the robbery of I.O. was predominantly independent of the robberies of A.M., J.P. and J.C. The [c]ourt also finds that the crimes involved separate acts of violence and threats of violence. Moreover, even if a reviewing court found that this robbery was part of a single criminal episode case law permits the imposition of consecutive sentences where crimes occurred at the same time and place. State [v.] Swint, 328 [N.J. Super. at] 264.

The [c]ourt further finds the defendant should not receive the benefit of a free crime with the imposition of a concurrent sentence as to this count.

Continuing with the [Yarbough] analysis, the [c]ourt notes the defendant was convicted of seven separate offenses, one of which we've already learned was merged for purposes of sentencing. Again, the [c]ourt must stress that the crimes involved four separate criminal episodes.

In imposing consecutive sentences the [c]ourt is not double counting aggravating factors.

Lastly, the [c]ourt considered the age of the defendant and the real time consequences of the aggregate sentence and finds that a consecutive sentence on this count is also warranted.

For all the foregoing reasons the [c]ourt finds that in qualitatively reviewing the [Yarbough] factors against the principle of proportionality and fundamental fairness in the overall aggregate sentence the [c]ourt is satisfied that an imposition of a

A-3502-22

consecutive sentence is warranted.  That's . . . <u>Torres</u> again[.]

Accordingly, Count 22 shall run consecutive to Count 6 and Count 17, but concurrent to Counts 12, 26 and 28.

We are satisfied the trial court addressed all of the relevant factors and requirements, including the fundamental fairness of the overall aggregate sentence stressed in <u>Torres</u>.  We see no abuse of discretion.  While the aggregate sentence imposed on defendant is substantial considering his youth and lack of prior convictions, it does not shock the judicial conscience.  <u>See</u> <u>Torres</u>, 246 N.J. at 272 (citing <u>Roth</u>, 95 N.J. at 364-65).  We thus decline to substitute our judgment for the trial court's.  <u>See</u> <u>O'Donnell</u>, 117 N.J. at 215.

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion.  <u>R.</u> 2:11-3(e)(2).  We note that defendant's contention in his self-represented submission that "[t]he lead detective in the <u>Miranda</u> interrogation was [investigating] his brother's robbery posing a conflict of interest" is presented to us in that single sentence.  <u>Cf.</u> <u>N.J. Dept. of Env't Prot. v. Alloway Tp.</u>, 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) (citing <u>Fantis Foods v. N. River Ins. Co.</u>, 332 N.J. Super. 250, 266-67 (App. Div. 2000)) (noting that an argument presented in a single sentence of the party's brief was insufficient); Pressler &

Verniero, <u>Current N.J. Court Rules</u>, cmt. 5 on <u>R.</u> 2:6-2 (2026).  Neither party[7] cites to legal authority that holds it is an impermissible conflict of interest for a law enforcement officer to participate in the investigation of a crime committed against a relative.  We are aware of no such principle.  We add that Detective Sergeant Matos—the brother of the first robbery victim—did not testify at the <u>Miranda</u> hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

---

[7] We note the State did not respond to defendant's self-represented letter, which was filed almost two months after the State filed its appeal brief, and more than a month after defendant's appellate counsel filed a reply-brief.

A-3502-22